FISHER *v.* STATE.*

(In Banc.  Nov. 15, 1926.)

[110 So. 361.  No. 25903.]

1. CRIMINAL LAW.  *In passing on application for change in venue,
   supreme court looks to completed trial; if case was prejudged
   or other conditions prevented defendant from securing fair trial,
   refusal of change of venue is error; showing on application for
   change of venue must be specific; where first motion for change
   of venue is sought to be renewed on ground of newly-discovered
   evidence, subsequent motion should set forth facts subsequently
   discovered.*

   In passing upon an application for a change of venue this court
   looks to a completed trial, and if it appears that the case has been
   prejudged or that other conditions exist which prevent a de-
   fendant from securing a fair trial, the court will apply the cor-
   rective.  The showing on the application for such change of
   venue must be specific.  And where a first ruling is sought to be
   renewed on the ground of newly-discovered evidence, the motion
   should set forth the facts subsequently discovered.

2. CRIMINAL LAW.  *Confessions induced by fear, though not by spoken
   threats, are "involuntary"* (*Const.* 1890, section 26).

   Confessions induced by fear, though not aroused by spoken threats,
   are nevertheless "involuntary," because the fear which takes
   away the freedom of the mind may arise solely from conditions
   and circumstances surrounding the confessor.

3. CRIMINAL LAW.  *If on preliminary hearing by court there is rea-
   sonable doubt whether confession was voluntarily made, it must
   be excluded; confession appearing at any stage of trial to have
   been made under circumstances rendering it incompetent should
   be excluded.*

   If on preliminary hearing by the court there is a reasonable
   doubt as to whether a confession was freely and voluntarily
   made, it must be excluded from the jury; and, after a confession
   is, on preliminary hearing by the court, permitted to go to the
   jury, either party may introduce the same evidence as was sub-
   mitted to the court, and any additional evidence; and if it then
   appears, or if at any stage of the trial it appears, that the con-
   fession was made under circumstances rendering it incompetent,

it should be excluded—citing *Johnson* v. *State*, 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183.

4. CRIMINAL LAW. *Where confession was obtained by inducements or fear, subsequent confession under such influence is not admissible, though person taking it states that accused need not make it, and that if he does it will be used against him; where one confession was illegally obtained, second confession, to be admissible, must be clearly shown not to have been made under influence producing first.*

   Where a confession has been illegally obtained from a person accused of crime by inducements held out, or by fear brought about by the person taking it, a subsequent confession made under the influence of such facts is not admissible, although the officer or other person taking it states to the accused that he need not make the statement unless he desires to do so, and that if he does make it it will be used against him. In order to make the second confession admissible under such circumstances it must clearly appear that it was not made under the improper influence which produced the first—citing *Jones* v. *State*, 133 Miss. 684, 98 So. 150.

5. CRIMINAL LAW. *Where defendant has to testify, to show involuntary nature of confession, for state to cross-examine him about alleged statements during coercive proceeding and to contradict his evidence by showing such statements is error.*

   Where confessions are obtained by coercion and the defendant has to testify to show the involuntary nature of the confession, it is error for the state on cross-examination to ask him about alleged statements made during the coercive proceeding and contradict his evidence in reference thereto by showing such statements. This cannot be done under the guise of impeaching evidence. The evidence being coerced cannot be used at all.

6. CRIMINAL LAW. *"Fair trial" requires accused's legal rights to be safeguarded and respected, a fair and impartial jury, a learned judge to instruct and pass on legal questions, and witnesses who can testify without fear and intimidation.*

   While no precise definition can be given defining what a "fair trial" is, it must be one where the accused's legal rights are safeguarded and respected. There must not only be a fair and impartial jury and a learned judge to instruct the jury and pass upon the legal questions, but there ought to be an atmosphere of calm in which the witnesses could deliver their testimony with-

out fear and intimidation, and in which the truth might be presented and given credence without fear of violence.

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 201, n. 31; p. 205, n. 65; p. 212, n. 52; p. 215, n. 12; p. 722, n. 8; p. 723, n. 9, 10; p, 728, n. 78, 81; p. 733, n. 1; p. 734, n. 23; p. 735, n. 34, 40; p. 806, n. 6.

APPEAL from circuit court of Coahoma county, Second district.

HON. W. A. ALCORN, JR., Judge.

John Fisher was convicted of murder, and he appeals. Reversed and remanded.

*Rice & Crisler, Vincent J. Brocato* and *T. S. Ward,* for appellant.

I.   The court erred in overruling appellant's motion for change of venue. *Bond* v. *State,* 128 Miss. 792, 91 So. 461; *Keeton* v. *State,* 132 Miss. 768; *Tennison* v. *State,* 79 Miss. 713, 31 So. 422; *Saffold* v. *State,* 76 Miss. 258; *Cavanah* v. *State,* 56 Miss. 307; *Brown* v. *State,* 83 Miss. 645; *State* v. *Gossett,* 108 S. E. 290, 16 A. L. R. 1299; *People* v. *Yoakum,* 53 Cal. 571; *Owen* v. *State,* 83 Miss. 31; *Magness* v. *State,* 103 Miss. 30, 60 So. 8; Hemingway's Code (1917), section 1242.

II.   The court erred in refusing to permit appellant to renew or re-open his motion for change of venue. *Bell* v. *Ayers,* 44 Conn. 35; *Gibbs* v. *Buckingham,* 48 Iowa 96; *Bond* v. *State,* 128 Miss. 792, 91 So. 461; *Hudson* v. *Hanson,* 75 Ill. 198; *Wheeling* v. *Black,* 25 W. Vt. 266; *Riely* v. *Pellitier,* 134 N. C. 316, 46 S. E. 734; 40 Cyc. 140; *Looney* v. *Commonwealth,* 115 Va. 921, 78 S. E. 625; *Briasco* v. *Lawrence,* 4 N. Y. Sup. 94; *People* v. *Kingley,* 8 Hun. (N. Y.) 233; *Calloway* v. *State,* 29 Ind. 442; *Bernhammer* v. *State,* 123 Ind. 577, 24 N. E. 509; *Spencer* v. *Spencer,* 136 Ind. 414, 36 N. W. 310; 27 R. C. L. 820-22; 40 Cyc. 150 and 151, note 2; *Reeder* v. *Baker,* 83 N. Y. 156; *People* v. *Mabrier,* 165 Pa. 1044; *Fletcher* v. *Com-*

*monwealth,* 123 Ky. 571, 123 S. W. 855; *Etter* v. *State,* 144 Pa. 560; *State* v. *Weisengoff,* 101 S. E. 450; *Bond* v. *State,* 128 Miss. 792, 91 So. 461; *Purvis* v. *State,* 71 Miss. 706; *Eddins* v. *State,* 110 Miss. 780, 70 So. 898.

III.   The court erred in refusing to allow appellant to introduce certain evidence in support of his motion for a new trial. *Bond* v. *State,* 128 Miss. 792; *Richburger* v. *State,* 90 Miss. 806, 44 So. 792; *Shuman* v. *Gavin,* 15 Ind. 93.

IV.   The court erred in overruling appellant's motion for a new trial. 2 Ld. Ken. 53 per L. MANSFIELD; *Miller* v. *Ross,* 43 N. J. 552; *L. N. O. & F. R. R. Co.* v. *Crayton,* 69 Miss. 152, 12 So. 271; *Williams* v. *State,* 99 Miss. 274, 54 So. 857; *Weathersby* v. *State,* 95 Miss. 300, 48 So. 721; *Patterson* v. *Romspeck,* 81 Ga. 808, 10 S. E. 9; *Barrentine* v. *State,* 51 So. 275; *Roundtree* v. *State,* 107 Miss. 166; *Campbell* v. *State,* 123 Miss. 113; *McDearly* v. *State,* 52 So. 796.

V.   The court erred in permitting Dr. T. N. Dye over appellant's objection to testify to the physical condition of Lindsey Coleman on the morning after the water-cure was administered. *McCall* v. *State,* 29 So. 1003; *Jones* v. *State,* 65 Miss. 179; *Newcomb* v. *State,* 37 Miss. 382; *Bonelli* v. *Brown,* 70 Miss. 142; Wigmore on Evidence, sections 953, 1025, 1029; *Fulton* v. *Hughes,* 63 Miss. 61; *MacMaster* v. *State,* 81 Miss. 374; *A. & V. R. R. Co.* v. *Thornhill,* 106 Miss. 387, 63 So. 674; *Davis* v. *State,* 85 Miss. 416; *Williams* v. *State,* 73 Miss. 821, 19 So. 795; *Bell* v. *State,* 38 So. 795; *Dunk* v. *State,* 84 Miss. 452, 36 So. 609; *Chism* v. *State,* 70 Miss. 742, 12 So. 852; *Garner* v. *State,* 76 Miss. 515, 25 So. 363; *Anderson* v. *State,* 91 Miss. 407, 45 So. 359; *Cooper* v. *State,* 94 Miss. 480; *Hitchcock* v. *Moore,* 14 A. S. R. 481; *Jones* v. *State,* 16 Ala. 154, 74 So. 830; *Simms* v. *State,* 86 Miss. 412, 32 So. 546; *Slaydon* v. *State,* 102 Miss. 101, 58 So. 977; *Jeffries*

v. *State,* 77 Miss. 757; *Moore* v. *State,* 102 Miss. 148, 59 So. 3; *Mullins* v. *State,* 41 Miss. 291; *Ehman* v. *State,* 40 So. 430; *Clark* v. *State,* 9 So. 820.; *Mitchell* v. *Tishomingo Sav. Inst.,* 56 Miss. 444; *Cavanah* v. *State,* 56 Miss. 299; *Brister* v. *Joseph Bowling Co.,* 29 So. 830; *Rucker* v. *State,* 71 Miss. 685, 14 So. 534; 28 R. C. L. 613; *Lambert* v. *Hamlin,* 73 N. H. 138, 6 Ann. Cas. 713; Wigmore on Evidence, section 2384; *Railroad Co.* v. *Messina,* 109 Miss. 143, 67 So. 693.

VI. The court erred in refusing to permit appellant to cross-examine the witness Gant with reference to the reliability of the bloodhounds used in the investigation testified to by the witness on direct examination on behalf of prosecution. Wigmore on Evidence, sections 944, 1000-1003.

VII. The court erred in permitting the appellee to cross-examine the witness, Coleman, as to any alleged hoodoo-balls. Wigmore on Evidence, sections 516-18; *Davis* v. *State,* 85 Miss. 418.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

I. *Motion for a change of venue.* Only one of the jurors testified that he had any knowledge of the crime. After twelve men had been selected for the jury by the court, tendered to the state and accepted by it, these twelve men were then tendered to the defendant. After considerable examination by attorneys for the defendant, they challenged one of the jurors for cause, which challenge was promptly sustained by the court. They then challenged one juror peremptorily. The panel was again filled and tendered to the defendant and they accepted the jury without further challenge, either for cause or peremptorily. In other words, this jury was accepted by the defendant after he had exhausted only

one of his twelve challenges. It occurs to me that if the cause of his client had been prejudged it would have been necessary to have exhausted more of their challenges.

II. *The motion to re-open for a change of venue.* The court overruled this motion assigning as reasons therefor: (1) The motion came too late. (2) The motion did not allege when the alleged newly-discovered evidence was discovered. (3) The motion did not set out the alleged newly-discovered testimony. I think all these grounds are well taken. The court did not have anything to pass upon.

III. *The evidence offered in support of the motion for a new trial.* This assignment of error cannot be sustained for the reason that the defendant does not show what this testimony would have been and same is not incorporated in this record as it very easily could have been.

IV. *The testimony of Dr. T. N. Dye was competent.* The defendant in the court below testified that he was present and witnessed the torture inflicted upon Lindsey Coleman in order to force a confession from him; that this torture was so cruel and brutal that Coleman became unconscious. Coleman testified to the same state of facts. Dr. Glass, a witness for the defendant, not for the state, testified that the next morning he deemed it necessary to call a physician to attend said Coleman and that he called Dr. Dye. It was competent for the state to rebut this testimony and it did so by calling Dr. Dye who testified that he did see and examine Coleman on that particular morning and that physically he was normal. This testimony was certainly competent to rebut that testimony offered by the defendant.

V. *The cross-examination of witness Gant with reference to the bloodhounds.* Counsel for appellant com-

plain that they were not allowed to cross-examine Mr. Gant with reference to the reliability of the bloodhounds used by him on the occasion that they trailed and identified John Fisher. The defendant never did go into the matter in order that the court might know whether or not the testimony was incompetent and never referred to this testimony after the jury was withdrawn.

VI. *The "hoodoo-balls."* Lindsey Coleman, a negro, was introduced as a witness for defendant. On cross-examination the district attorney asked him several questions with reference to some alleged "hoodoo-balls." The defendant objected to this line of interrogation and the court, before he ruled upon the objection, caused the jury to retire and permitted the district attorney in the absence of the jury to interrogate the witnesses with reference to said "hoodoo-balls," where he got them and their effect. The defendant then moved the court to exclude from the consideration of the jury all questions and answers with reference to the bottle containing the "hoodoo-balls" about which this witness had been interrogated. The court did not allow the examination of this witness to be made before the jury and on motion of the defendant's attorney he excluded that part of the examination which was conducted before them from their consideration. I do not see how this testimony could have had any effect either one way or the other, but conceding that the few questions that were answered in the presence of the jury were erroneous, the court cured same and rendered same harmless by instructing the jury that they should not consider this testimony.

*Maynard, Fitzgerald & Venable,* also, for the state.

I. It is assigned for error that the lower court should have granted the motion for change of venue. The evidence sustained the finding of the court and certainly it cannot be said that in view of the evidence offered,

there was any abuse of discretion and the action of the trial court with reference to this trial incident will not be set aside. *Long* v. *State,* 133 Miss. 33; *Regan* v. *State,* 87 Miss. 422.

II.    It is alleged that the lower court erred in refusing to permit appellant to re-open the motion for change of venue on the ground of newly-discovered evidence and on after-developed facts. In the first place what the after-developed facts were does not appear of record and, hence, cannot be considered. *Nevers* v. *Gullota,* 96 So. 513.

Again, it will be noticed that the motion to re-open the question of change of venue on the ground of newly-discovered evidence was made after the motion for change of venue had been overruled on evidence taken after the defendant had announced ready for trial, after a motion for a special venire had been made, after several days had elapsed, the special venire drawn and returned and the trial was ready to proceed.

Wherever one applies to a court to re-open a matter already adjudicated on the ground of newly-discovered evidence, it must appear, first, that the newly-discovered evidence is material; and to this end, what the newly-discovered evidence is must be set out in order that the court may judge of its materiality.    Second, it must appear that the evidence is of such character and so material that it might change the result.    Third, since litigants are not permitted to trifle with the court and are required to use due diligence, it must be shown that the evidence was discovered since the trial of the matter to be set aside and that by reasonable diligence it could not have been discovered sooner and in time for presentation when the original trial was had.    *Ware* v. *State,* 133 Miss. 837; *Campbell* v. *State,* 123 Miss. 713; *Quick* v. *State,* 133 Miss. 634; *Overton* v. *State,* 101 Miss. 607.; *Shows* v. *State,* 92 Miss. 92; *Day* v. *State,* 91 Miss. 239; *Cooper* v. *State,* 53 Miss. 393.

Counsel made no showing which would justify or authorize the court in re-opening the original motion for change of venue. It is clear that the court committed no error in overruling the motion.

III. Appellant says that the court erred in not permitting him to introduce certain evidence on his motion for a new trial, to-wit: the second motion made by him. It appears from the brief that this evidence consisted of purported records of purported trials of Rayford Leonard and Lindsey Coleman. A sufficient answer to this contention is that the record in this cause did not disclose that any such offer was made. *Oulette* v. *Davis,* 69 Miss. 762; *New Orleans, etc., R. R. Co.* v. *Scarlet,* 115 Miss. 285; *Tucker* v. *State,* 103 Miss. 117; *LeBarron* v. *State,* 107 Miss. 663; *Gavin* v. *Gavin,* 116 Miss. 197.

IV. It is said that the lower court erred in refusing to admit certain evidence on behalf of appellant. A specific assignment pointing out the particular evidence complained of is necessary in order to have the alleged error considered. *Adams* v. *Munson,* 3 How. 77.; *Green* v. *Creighton,* 7 S. & M. 197; *Cox* v. *Cox,* 8 S. & M. 292; *Belfour* v. *Mitchell,* 12 S. & M. 629; *Smith* v. *Williams,* 36 Miss. 545.

Nowhere in the motion for new trial nor in the assignment of error is the evidence complained of set forth or brought to the attention of the court. There is no way to know what evidence is complained of and for this reason this assignment cannot be considered.

V. These confessions were permitted to go to the jury without any objection whatsoever on behalf of the appellant. Even assuming that he had made a proper motion to exclude later on in the trial, the court should have overruled such a motion because not objected to at the time of their introduction. Failure to object to evi-

dence at the time of the introduction is a waiver of any objection thereto. *Peters* v. *State,* 106 Miss. 333.

Confessions if improperly allowed to go to the jury without objections cannot be afterwards excluded. *Dick* v. *State,* 30 Miss. 593; *Minton* v. *State,* 101 So. 169; *Coon* v. *State,* 13 S. & M. 246.

Error as regards proof of the voluntary character of a confession will not be available on appeal unless made a ground of special exception in the court below. *Hightower* v. *State,* 58 Miss. 636. No error can be predicated of overruling objection to testimony previously introduced without objection. *Mabry* v. *State,* 71 Miss. 716. If part of the testimony is admissible, a motion to exclude all testimony, including that which was good, was properly overruled even though some is bad. *Lee* v. *State,* 137 Miss. 329.

Argued orally by *Vincent J. Brocato* and *Greek L. Rice, Jr.,* for appellant, and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, John Fisher, was indicted, tried and convicted of the murder of Grover C. Nicholas, in the Second district of Coahoma county, Miss. The killing occurred on the night of October 15, 1925. The deceased was employed, and slept in a room adjoining the store. He was killed by being struck on the head, back of the ear, with some blunt instrument. On the morning following the killing the owner of the store went to the store. He noticed that the doors were open, and went into the store. He found Mr. Nicholas lying on the floor unconscious. Blood was flowing from his wound. His feet were tied together with a rope, and his hands were tied behind him with a corset string. Nicholas was alive but unconscious. He died a short while thereafter.

Bloodhounds were sent for. Upon the arrival of the dogs upon the scene they were taken into the store, and immediately took up a trail, and, according to the testimony, the owner of the dogs followed them out of the store onto the railroad track and into the yard of a woman by the name of Mollie Berry, thence to a house in the yard occupied by John Fisher, the appellant. He testified that the dogs bayed and attempted to spring upon the appellant, as was their custom when they located the party whom they had trailed. The owner then took the dogs and circled the house in which the appellant was living, with a view of ascertaining whether the party whose trail was being pursued had left the premises. But the dogs failed to find or pursue another trail, and returned to the house occupied by John Fisher, and he (Fisher) was arrested and placed in jail. Subsequently the appellant was moved from the jail of Coahoma county to the jail in Tallahatchie county, where he was kept about three or four days and returned to Coahoma county jail at Clarksdale, Miss.

Appellant's counsel made a motion for a change of venue on the ground that the appellant could not secure a fair trial on account of prejudgment of the case in Coahoma county. This motion was supported by the affidavit of the appellant and two young attorneys who defended him on the trial. One of the attorneys took the stand as a witness and testified in support of the motion, and the appellant rested. Whereupon the state introduced a number of county officers and other citizens of the county, who testified that there was no prejudgment of the case in the county to the extent that the appellant could not secure a fair and impartial jury, and a fair and impartial trial in accordance with a regular legal procedure. The court overruled the motion for a change of venue and proceeded with the trial.

The state offered the testimony above set forth, also testimony of confessions made by the appellant, Fisher. When the testimony was offered the witnesses tendered

testified that the confessions were free and voluntary.
No objections were offered to this testimony at that time,
but subsequently the defendant, after the state had rested,
introduced the sheriff, who testified that he was sent for
one night to come and receive a confession of the appel-
lant in the jail; that he went there for that purpose; that
when he reached the jail he found a number of parties
in the jail; that they had the appellant down upon the
floor, tied, and were administering the water cure, a spe-
cies of torture well known to the bench and bar of the
country. The sheriff testified that he told these people not
to hurt the appellant, and that the process was new to
him as he witnessed it being administered to the appel-
lant.]

Several persons were introduced by the appellant who
testified as to the presence of the parties in the jail and
the administering of the water cure to Fisher and others
jointly charged with the offense with him. The de-
fendant also introduced a witness by the name of Hicks
Ellis, who testified that he was in the party which ad-
ministered the water cure to the appellant, and secured
the confession thereby.

The witnesses introduced by the state to establish these
confessions, with one exception, were parties who went
to the jail subsequent to this administering of the water
cure, and who testified that they offered no inducements
to the appellant to make the confessions, made no threats,
or did anything which would make the confessions inad-
missible.

The prosecuting attorney, on cross-examining these
different persons to whom the water cure was adminis-
tered, questioned them as to numerous statements they
made in the alleged confessions, several of which were
denied by the witnesses; and, in rebuttal, after the de-
fense closed, the state offered these statements for the
ostensible purpose of impeaching these witnesses. These
statements were received over objections and exceptions.

After the evidence for the defendant was introduced, a motion was made to exclude the evidence as to the confessions, especially that of certain named persons, on the ground that the confessions were shown not to have been made freely and voluntarily. This motion the court overruled. The court did, however, exclude the testimony of Hicks Ellis as to the confessions made to him, on the ground that they were unlawfully obtained. The court refused to exclude the confessions made to a brother of the said Hicks Ellis subsequent to the administering of the water cure, and also refused to exclude several other confessions to named parties.

After the trial of this appellant another trial of a person jointly indicted with him was had, and resulted in an acquittal, which was followed by a lynching of the person so acquitted. After this trial and subsequent lynching, the sheriff of the county was indicted for dereliction of duty. He first pleaded not guilty thereto, but subsequently withdrew the plea and pleaded guilty, and was fined five hundred dollars therefor by the court.

After these things happened, the court still being in session, the appellant moved to reopen his case, and to offer additional testimony on the motion for a change of venue, which evidence he claimed to have discovered after the trial. He also offered to introduce the complete record of the trial of Coleman, the person jointly indicted with the appellant and acquitted, and to introduce the fact that the lynching took place, and to introduce the record in the case against the sheriff for failure to perform his official duty. The motion did not set out the facts which the appellant intended to prove by such records, nor did the motion state specifically what would be shown on the motion should it be reopened. Similar offers were made on the motion for a new trial, and the court refused to receive them, basing his ruling, in part, upon the ground that the motion did not specifically show what facts were discovered since the overruling of

the motion that were not known at that time, and also upon the ground that the motion came too late.

In passing upon an application for a change of venue the court looks to a completed trial, and if at any stage of the trial it appears that the case has been so prejudged, or that other conditions exist which prevent a defendant from securing a fair and impartial trial, the court should entertain the motion even though this appear upon a motion for a new trial. The object of the law is to give a person a fair and impartial trial, and if this result is obtained the court will not disturb its action. But if the court is satisfied clearly that it has not been obtained, it will reverse itself, set aside the judgment, and grant the motion.

The showing on the application for a change of venue was not as full and explicit as it should have been. It should have specified, when it was sought to renew the motion, what particular evidence had been subsequently discovered that would show that a fair and impartial jury and a fair and impartial trial could not be secured.

In this case it is not necessary to pass upon the question as to whether the motion to reopen the case for new proof on the motion to change the venue should have been sustained, because, for other reasons hereafter noticed, the judgment must be set aside and a new trial granted. And it is presumed that on the remand of the case the court will act as may be proper upon the showing and conditions as they may then exist.

We are satisfied that the court erred in receiving the confessions under the circumstances disclosed in this record. The constitution of the state provides in section 26, among other things, that "the accused shall not be compelled to give evidence against himself." This guaranty is violated whenever a confession is illegally extorted from a person accused of crime. In *White* v. *State,* 129 Miss. 182, 91 So. 903, 24 A. L. R. 699, the court, in the first syllabus of that case, held:

"Confessions induced by fear, though not aroused by spoken threats, are nevertheless involuntary, because the fear which takes away the freedom may arise solely from the conditions and circumstances surrounding the confessor."

That case, in the methods resorted to to procure the confession, is a good deal like the one before us. There an ignorant negro boy was arrested, brought to the scene of a horrible murder, and after he was released by the authorities fell into the hands of infuriated citizens, who took him into a store building where the bloody corpse lay and a crowd of armed men were assembled, to obtain a confession. The boy confessed to one of the men, and then his hands were tied behind him, he was placed upon the floor, and a white man stood upon his body and administered to him the water cure, which consisted of pouring water into his nose. The court held that this confession was unlawfully obtained, and was therefore involuntary. It is also held, in the third syllabus of the case, that:

"Where confessions were obtained at the scene of the murder by threats, duress, and physical violence, it was error to refuse to allow defendant's counsel to introduce testimony showing a connection between such involuntary confessions, and another confession to some of the same parties subsequently made at the jail to show that the same influence obtained in the latter confession rendering it involuntary."

In *Johnson* v. *State,* 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183, a voluntary confession is defined in the first syllabus as follows:

"A voluntary confession is one proceeding from the spontaneous operation of the party's own mind, free from the influence of any extraneous disturbing cause. A confession was not voluntary which was obtained from a defendant who was sick and in jail and in fear of lynching by a newspaper reporter who told the defendant he would have no peace or hope of salvation unless

he confessed, that he, the reporter, was a 'spiritualist' and could look into the defendant's heart, and see the crime which he had committed."

In the second syllabus of this case it is said:

"If on preliminary hearing by the court, there is a reasonable doubt as to whether a confession was freely and voluntarily made, it must be excluded from the jury, and after a confession has, on preliminary hearing by the court, been admitted to go to the jury, either party may introduce the same evidence as was submitted to the court, and any additional evidence relative to its weight or credibility, and if it then, or at any stage of the trial, appears that the confession was made under circumstances rendering it incompetent, it should be excluded. It is necessary to look to all the surroundings of the person making the confession in order to determine whether it is rendered inadmissible because it resulted from fear or threat or undue influence of a person, even though one not in authority, operating upon the mind of the person confessing. Even the act of third persons may amount to a threat excluding confession though no objectionable words are spoken."

In *Mathews* v. *State,* 102 Miss. 549, 59 So. 842, the dedefendant, a negro boy fourteen years old, was charged with stealing a diamond pin and denied any knowledge of the whereabouts of the property, and the owner of the diamond pin, having failed to get a confession from the boy by varous promises, sent for the town marshal, who told the boy that it would be better for him to get the pin; that if he would tell the truth about the pin and get it "it would be all right," and further said to the defendant, "John, tell me all about this, I don't want to put you in trouble;" and the boy after being whipped confessed. It was held that such was not a voluntary confession, and should have been excluded.

In *Jones* v. *State,* 133 Miss. at page 684, 98 So. 150, in the third syllabus, it is said:

"Where a confession has been illegally obtained from a person accused of crime by inducement held out, or by fear brought about by the persons taking it, a subsequent confession made under the influence of the same inducements will not be admitted, although the officer taking them states to the accused that he need not make a statement unless he desires, and that such statement, if made, will be used against him, and that such officer has no offer to make him. In order to make the second admissible it must clearly appear that it was not made under the same improper influence as the first"—citing *Banks* v. *State,* 93 Miss. 700, 47 So. 437.

The court in that case, quoting from *Banks* v. *State, supra,* said:

"It does not sufficiently appear that the appellant was not acting under the influence of the inducements held out to him the day before to warrant us in concluding that the testimony offered to prove the second confession should have been admitted. In order to make this alleged second confession admissible, it must clearly appear that the second confession was not made under the same improper influence as the first."

It clearly appears in the case before us that the original confession in the jail was secured by force and in violation of the law. The sheriff himself so testified, and so did one of the participants in securing the confession. There can be no kind of doubt that this confession was unlawfully secured. The appellant was told in that proceeding to stick to the confession. And another person jointly charged, who had made a confession, receded from it and was called upon a second time, given a second treatment, and urged to stand by his confession. It is impossible for the reasoning mind to ignore the force and effect that these proceedings had upon these negroes. It would be vain and idle to indulge the hope that the effect was removed from their minds before the confessions were repeated to the state's witnesses.

While the defendant was on the stand being cross-examined, he was asked as to the statement taken by the county prosecuting attorney and a stenographer, in which the county prosecuting attorney told him he need not make a statement unless he wanted to, and that whatever he said would be used against him. He also examined the appellant about other statements made in the alleged confessions which the appellant denied, and about which he was contradicted by the evidence of other parties who had secured the confession. The other persons jointly indicted who testified in behalf of the appellant were subjected to similar cross-examinations, and their evidence about their own confessions was contradicted by persons who unlawfully obtained them. This evidence, being unlawful, and obtained in plain violation of the constitutional rights of the appellant and others being compelled to testify against themselves, cannot be used under the guise of impeaching the witness. It would be a vain and useless thing from a practical standpoint to exclude such confessions as such and admit them for the purpose of impeaching the witness. It is perfectly manifest to us that the appellant did not secure a fair and impartial trial as guaranteed to him by the constitution.

In *Ezra Hampson* v. *State*, 88 Miss. 257, 40 So. 445, 117 Am. St. Rep. 740, Judge CALHOUN, speaking for the court, said:

"Mulattoes, negroes, Malays, whites, millionaires, paupers, princes, and kings in the courts of Mississippi, are on precisely the same exact footing. All must be tried on facts, and not on abuse. Only impartial trials can pass the Red Sea of this court without drowning. Trials are to vindicate innocence or ascertain guilt."

What is a fair trial? Perhaps no precise definition can be given it, but it certainly must be one where the accused's legal rights are safeguarded and respected. There must not only be a fair and impartial jury and a learned and upright judge to instruct the jury and pass upon the legal questions, but there ought to be an atmosphere

of calm, in which the witnesses can deliver their testimony without fear and intimidation, and in which the attorneys can assert the defendant's rights freely and fully, and in which the truth may be received and given credence without fear of violence. In no case must violence be resorted to—no coerced verdicts—and when acquittals are given, there must be no visible appearance of violence.

We know there are time when atrocious crimes arouse people to a high sense of indignation. And this is true especially in cases where an upright citizen is murdered without cause. But the deep damnation of a defendant's crime ought not to cause those intrusted with the enforcement of the law to swerve from the calm and faithful performance of duty. Coercing the supposed state's criminals into confessions and using such confessions so coerced from them against them in trials has been the curse of all countries. It was the chief inequity, the crowning infamy of the Star Chamber, and the Inquisition, and other similar institutions. The constitution recognized the evils that lay behind these practices and prohibited them in this country. And while it is true that ordinarily the competency of a confession must be raised when the evidence is introduced, there are exceptions to that rule, as noted in the above case of *Johnson* v. *State,* 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183.

The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure, and wherever the court is clearly satisfied that such violations exist, it will refuse to sanction such violations and will apply the corrective.

For the errors committed, the cause must be reversed and remanded for a new trial.

*Reversed and remanded.*