ANNA MAE McGRAFF, ANNA MAE McGRAFF, as Admin-
istratrix of the Estate of MELVIN EARL McGRAFF,
Deceased, Plaintiffs and Respondents, *v.* WILLIAM Mc-
GILLVRAY, as Executor of the Estate of WILBUR C.
COOK, Deceased, Defendant and Appellant.

No. 9885.

339 Pac. (2d) 478.

Submitted January 7, 1959. Decided April 9, 1959:

Rehearing Denied June 2, 1959.

MR. JUSTICES ADAIR and BOTTOMLY dissented.

Wellington D. Rankin, Arthur P. Acher, Helena, for appellant.

Wellington D. Rankin and Arthur P. Acher argued orally.

Keeley, McElwain & Ryan, Deer Lodge, for respondent.

Joseph A. McElwain argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal by defendant from an order denying his motion for change of place of trial.

The action was brought in Powell County, in behalf of the heirs of Melvin Earl McGraff, to recover damages for his wrongful death. The complaint alleges that defendant McGillvray is the executor of the estate of Wilbur C. Cook, now deceased; that Wilbur C. Cook, on August 19, 1956, wilfully, unlawfully and wrongfully shot and killed Melvin Earl McGraff with a 25-35 Winchester rifle. This allegation was put in issue by the answer of defendant, and an affirmative defense was asserted to the effect that if Wilbur C. Cook killed Melvin McGraff it was done in self-defense. At the time of filing the answer, defendant filed a motion for change of venue in which it was alleged that defendant believes "an impartial trial cannot be had in the County of Powell."

In support of the motion, defendant filed his own affidavit and the affidavit of Sandy O. Rierson and A. G. Cook, and asserted in the motion that it would be based also on such oral testimony as may be introduced at the hearing on the motion.

The affidavit of A. G. Cook set forth that he is not related to Wilbur C. Cook; that he lives in the vicinity of Avon; that on the evening that Melvin Earl McGraff and another man named Homer B. Garren had been shot and killed while fishing in Nevada Creek near the Wilbur C. Cook ranch in Powell County, a posse was formed by the sheriff of that county and a search was instituted for Wilbur C. Cook since "it was assumed that he had killed the two fishermen;" that Wilbur C.

Cook was shot and killed by the posse; that the killing of the three people was sensational news, furnishing a topic of conversation by word of mouth and a subject of radio broadcasting and newspaper publicity; that there was no investigation as to who killed the two fishermen until after the posse had shot and killed Wilbur C. Cook; that affiant has heard the matter discussed by residents of Powell County from all parts of the county and public feeling against Wilbur C. Cook was highly inflamed; that there exists a general feeling of hostility and prejudice against Wilbur C. Cook; that the newspaper and radio publicity all assumed that Cook was guilty of murder; that he has heard residents from all parts of the county express the opinion that Cook killed the two fishermen, Garren and McGraff, without cause or justification and that this is the fixed opinion in the county; that the executor of the Cook estate could not have a fair and impartial trial in Powell County by reason of the feeling of bias, prejudice and hatred which exists against Cook in the county; that a jury would be consciously or unconsciously aware of the general public sentiment against Cook and thus would be influenced by the atmosphere of prejudice.

The affidavit of Rierson, who operates a gasoline service station at Avon, was of the same general character as that of A. G. Cook.

The affidavit of defendant administrator was also of the same tenor as that of A. G. Cook except that it set out that the posse included not only the sheriff of Powell County but also the county coroner, several highway patrolmen, state fish and game employees, several deputy sheriffs, a number of private citizens and George Talbot, an attache of the Montana State Prison who owned and maintained trained bloodhounds which were used to locate the whereabouts of Wilbur C. Cook; that Cook received six or more fatal wounds from a volley of shots fired by members of the posse; that the Montana Standard, a Butte daily newspaper, and the Silver State Post, a weekly published in that county wrote up the events which were widely circu-

lated and read in all parts of the county; that in these articles it was assumed and stated that Cook had been guilty of murdering McGraff and Garren.

In opposition to the motion, plaintiff filed an affidavit of Maurice Coughlin, who resides at Helmville, being in the northern part of the county. He stated that he has read and heard about the case but knows of no prejudice or bias or fixed opinion on the part of "any appreciable number of residents" which would preclude Cook or his executor from having a fair and impartial trial in Powell County; that there is no general feeling of hostility or prejudice against Cook.

Likewise plaintiff filed an affidavit of J. O. Gehrett, publisher of the Silver State Post, which contained the same matter as the affidavit of Coughlin except that it recited in addition that the article published in his paper was but a factual account of the matters involved as given to him by the sheriff.

Vic Hendricksen, who resides in the south end of the county, made affidavit that he read of the death of McGrath and Garren; that the communication by newspaper, radio and word of mouth was no more than such an incident would normally bring as news coverage; that the executor "could have a fair and impartial trial in Powell County and that there is no feeling of bias, prejudice or hostility and hatred which exists" in the county and "that if a jury were selected to try the matters here involved they would not be influenced by any atmosphere of prejudice, since none exists in this county."

Thelma Quast made affidavit similar to that of Vic Hendricksen.

Don Valiton, an insurance agent and state senator who comes in contact with many people from all parts of the county, made affidavit similar to that of Vic Hendricksen except additionally he asserted that he had heard discussion about the incident and that the expressions and statements were not of a type to cause public feeling to be so inflamed as to prohibit a fair and impartial trial in Powell County; that based upon his conversa-

tions with people in the county he has found no evidence of an inflamed public opinion against Cook.

At the hearing on the motion, Ed Darrow, the sheriff, a witness for plaintiff, recounted the events leading up to the killing of Cook by members of the posse. In substance his testimony was: In addition to finding the bodies of McGraff and Garren they found a jeep station wagon had been burned near the place where the bodies were found; they also found two cartridge cases that had been burned from a 25-35 calibre gun which was the calibre of a gun owned by Cook; they spent the night at the place where the jeep had been burned and the next morning went to the home of Cook; they found him in the barn; he noticed a rifle barrel in the doorway and saw that it was lifted and raised up and then went back down again; he called to the person in the barn several times asking him to come out and toss his rifle out and that if he did so he would not be hurt; he told him he was the sheriff; thereafter, upon obtaining no response from the person in the barn he fired teargas shells into the barn; Cook then stepped outside and started firing and hit one member of the posse; he had instructed members of the posse when they first met not to do any shooting; he said that when Cook started shooting there was nothing else to do but to defend; members of the posse thereupon shot and killed Cook.

Newspaper articles of August 22 and 24 contained pictures and the names of the posse. Among other details they stated that ballistic tests of slugs taken from one of the possemen and from the body of one of the fishermen were fired in Cook's rifle, and also empty cartridge cases found around the fishermen's burned station wagon also were fired in Cook's rifle.

The rule is well settled that the matter of granting or refusing a motion for change of venue rests in the sound discretion of the trial court and that its decision will be disturbed only when it appears that the court has abused its discretion. Torstenson v. Independent Publishing Co., 86 Mont. 163, 282 Pac. 861; Kennon v. Gilmer, 5 Mont. 257, 5 Pac. 847, 51 Am.

Rep. 45; State v. Lund, 93 Mont. 169, 18 Pac. (2d) 603; State v. Davis, 60 Mont. 426, 199 Pac. 421; Atkinson v. Bonners Ferry Lumber Co., 74 Mont. 393, 240 Pac. 823.

Here the evidence relating to the vital issue of whether a fair trial may be had in Powell County within the meaning of section 93-2906 was at best, from the standpoint of defendant, conflicting.

When this is so, there is ordinarily no basis for a finding that the trial court abused its discretion in denying the motion.

Counsel for defendant, while recognizing the foregoing as the general rule, assert that the facts here show conclusively that there was prejudice against Cook else he would not have been killed. Were we to accept the conclusion contended for by counsel for defendant so far as prejudice against Cook is concerned it would not help defendant here for we must, before we can reverse the trial court, find some justification for extending that prejudice to the defendant here, the executor of Cook's estate. As to such prejudice the evidence is conflicting.

There is no showing of facts that extends the prejudice against Cook beyond the grave. So far as this record goes, those, if any, who hated Cook or were prejudiced against him had their hatred or prejudice satisfied when he was put to death. We would be indulging in surmise and speculation were we to conclude that the heirs, devisees or legatees of Mr. Cook could not have a fair trial because of the circumstances unfolded in the record. If there be any evidence that the executor cannot have a fair trial there is at least as much evidence the other way. The majority of this court think the trial court did not abuse its discretion in denying the motion.

The word "must" as used in section 93-2906 does not solve the problem before us as suggested in the dissenting opinions. The duty devolved upon the court to determine whether a showing had been made to sustain the conclusion that "there is reason to believe that an impartial trial cannot be had" in the county where the action is pending before a change of

venue, must be granted. The cases of Merchants Credit Service, Inc. v. Chouteau County Bank, 112 Mont. 229, 114 Pac. (2d) 1074; State ex rel. O'Connor v. McCarthy, 86 Mont. 100, 108, 282 Pac. 1045; and State of California v. Superior Court of City and County of San Francisco, 14 Cal. App. (2d) 718, 58 Pac. (2d) 1322, relied on in the dissenting opinion of Mr. Justice Adair to sustain the meaning of the word "must" were cases dealing with a statute where plainly there was no discretion vested in the court.

Such is not the effect of the statute we have before us here.

In the dissenting opinions it is asserted in substance that Cook was summarily tried, convicted and executed by the posse. The authors of those opinions erroneously assume that the posse adjudged Cook guilty and executed the sentence of guilty because he killed McGraff and Garren. Such are not the facts. Cook was not found guilty or executed for having killed McGraff and his fishing partner Garren. Had it had conclusively shown that he did kill these fishermen that would not have justified his killing at the hands of the posse. That is not the reason why Cook was shot by the posse. He was shot, according to the record before us, because instead of submitting to arrest he came out of the barn spraying bullets at the posse and after actually striking one of them with one of the bullets and this after being assured that he would not be harmed if he came out of the barn unarmed. This showing stands uncontradicted in the record.

Likewise in the dissenting opinion of Mr. Justice Adair it is erroneously assumed that the jury which will be chosen to try the case is to be drawn from the posse. The posse consisted of fifteen men. There were 3,529 registered voters in Powell County for the election of 1958. The district judge was justified in concluding that out of these 3,500 voters an impartial jury could be selected.

The dissenting opinion of Mr. Justice Bottomly seems to belittle the opposing affidavits filed by plaintiff. We shall not prolong this opinion by setting them out in full. It is sufficient

to say that they are just as positive that defendant can have a fair trial in Powell County as his affidavits are that he cannot.

On this conflict, we cannot say that the trial court abused its discretion in denying the motion for change of venue. To do so we would be obliged to judicially determine from conflicting affidavits that a fair jury cannot be obtained from the more than three thousand voters in Powell County, and this after the lapse of about two years and six months from the time to which the affidavits relate.

Where reasonable minds might reach different conclusions, we prefer to grant such motions rather than take a chance of depriving a party of a fair trial.

Since two members of the court think the motion should have been granted and since every member of the court is desirous of assuring defendant a fair trial we have concluded to permit defendant to renew his motion if it develop that a fair and impartial jury cannot be obtained.

This is not an unheard of practice. It was done in Buck v. Reighard, Ohio Com. Pl. 1949, 85 N.E. (2d) 302, and we recognized the principle by allowing the motion to be renewed when we granted a new trial on other grounds in State v. Searle, 125 Mont. 467, 239 Pac. (2d) 995.

The order appealed from is affirmed.

MR. JUSTICE CASTLES, and THE HONORABLE GUY C. DERRY, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON, concur.

MR. JUSTICE BOTTOMLY:

I dissent.

This is an appeal from an order of the district court denying the motion of the defendant for change of place of trial.

The action was brought in Powell County on behalf of the heirs of Melvin Earl McGraff to recover damages for his wrongful death.

The other facts need not be repeated here.

 · There can be no question but that the whole of Powell County was deeply aroused over the double killing of Melvin Earl McGraff and Homer B. Garren, to be climaxed by the killing of Wilbur C. Cook by a *posse comitatus* (or power of the county) formed and commanded by the sheriff of Powell County. Wilbur C. Cook was suspected of the killing of Melvin Earl McGraff and Homer B. Garren.

With the wide publicity given throughout Powell County of these events by radio and the press, all purporting to assert as facts that Wilbur Cook had murdered the two men, and a running account of the happenings of the *posse comitatus* and the bloodhounds, together with the reaction and talk of the many members of the *posse comitatus*, their relatives and friends, being spread throughout Powell County, it would seem to be quite natural and impossible for anyone standing in the shoes of and representing Wilbur C. Cook to have a fair and impartial trial before a jury summoned from the citizenship of Powell County where this all transpired, and where most, if not all, of the witnesses against defendant no doubt will come.

The affidavit of William McGillvray, as executor of the estate of Wilbur C. Cook, deceased, in connection with his motion for a change of venue, is as follows:

"William McGillvray, being duly sworn, deposes and says:

"That he is the duly appointed, qualified and acting Executor of the Estate of Wilbur C. Cook, deceased; that he was appointed Executor of the Last Will and Testament of said Wilbur C. Cook on September 17, 1956.

"That said Wilbur C. Cook was the owner of and resided upon ranch property in Powell County, Montana, situated on Nevada Creek in a mountainous area; that said property was located so that a strip approximately one-fourth mile wide and three quarters of a mile long was traversed lengthwise by the course of Nevada Creek; that said Wilbur C. Cook had a cabin and a barn and other out buildings upon said lands; that adjoining and to the north of said lands was certain property known as the Keiley ranch.

"That on or about August 19, 1956, Melvin Earl McGraff and Homer B. Garren were fishermen, who met their death from gunshot wounds beside Nevada Creek on or near the lands of the said Wilbur C. Cook; that the Sheriff of Powell County upon being called to the scene, *concluded* that the men had been murdered by said Wilbur C. Cook; that a posse was formed by the Sheriff of Powell County, Montana, to look for said Wilbur C. Cook; that the posse included the Sheriff of Powell County, the County Coroner, several Highway Patrolmen, State Fish and Game Employees, George Talbot, an attache of the Montana State Prison of Deer Lodge and Powell County, Montana, who owned and maintained and was skilled in the handling of trained bloodhounds used in tracking persons, several deputy sheriffs and a number of private citizens; that throughout the night the posse continued its search, and on the morning of August 20, 1956, one or more airplanes were employed by the authorities to fly over the mountainous area; that a pilot then reported seeing a jeep on the ground near the ranch premises of said Wilbur C. Cook which it was ascertained was his jeep; that thereupon approximately *fifteen members of the posse,* including the Sheriff of Powell County, the Coroner of Powell County, the said George Talbot with his bloodhounds, several other officers, and several private citizens went to the ranch buildings of said Wilbur C. Cook, where he was found; that said *Wilbur C. Cook was not arrested so that he could be brought to trial, although surrounded by more than fifteen armed men; that the public feeling was so high and the minds of the posse were so inflamed, he was shot and killed, receiving six or more fatal wounds from a volley of shots fired by members of the posse.*

"That immediately after the bodies of the two fishermen were found, the fact that they had been shot and that a posse was searching for the killer, was widely publicized by radio and word of mouth; that the minds of the people of Powell County were inflamed against Wilbur C. Cook; that the posse included two relatives of the deceased fishermen; *that the in-*

*tense feeling against him is evidenced by the fact that Cook was shot and killed without being arrested and tried;* that the search and the *slaying of the suspect Wilbur C. Cook* was the subject of lengthy newspaper articles in The Montana Standard, a daily newspaper published at Butte, Montana, having a large circulation in Powell County, Montana, and also in the Silver State Post, a weekly newspaper published in the county; that both of said newspapers are widely read in all parts of the county; that in the newspaper accounts *it was assumed that* Wilbur C. Cook had been guilty of murder and that he was the person who killed Melvin Earl McGraff and Homer G. Garren; that radio broadcasts of the killings were heard in all parts of the county.

"That affiant is a rancher over sixty-two years of age who was born in and has resided in Powell County all of his life; that affiant is acquainted with and has talked with people from all parts of Powell County and from discussing this matter with people from all parts of the County, knows that a strong feeling of prejudice and hostility existed immediately after the killing had occurred against Wilbur C. Cook and a general conviction that he was guilty of murder; that the minds of the people of the County were so incited and inflamed that a general prejudice and feeling of hatred existed against said Wilbur C. Cook; *that the feeling of prejudice against Cook still exists and that by reason thereof, the defendant cannot have a fair and impartial trial in the above entitled cases by reason of said prejudice and feeling against said Wilbur C. Cook is so strong that any jury picked in Powell County would be influenced by the feeling of prejudice consciously or unconsciously.*

"That affiant alleges upon information and belief that the two above-entitled cases should be transferred to some other county where the matter was not so widely publicized and discussed and where the feeling of hostility and prejudice against said Wilbur C. Cook does not exist." Emphasis supplied.

The affidavit of A. G. Cook, no relation of Wilbur C. Cook,

deceased, and the affidavit of Sandy O. Rierson were of the same general affirmative character as the affidavit of William McGillvray.

Here, every requirement of the statute was followed by William McGillvray, as executor of the estate of Wilbur C. Cook, deceased, for a change of venue.

In opposition to the motion several affidavits were filed from officials and other residents of the county stating generally that there is no reason why William McGillvray, executor of the estate of Wilbur C. Cook, deceased, cannot have a fair and impartial trial in their county. It is only natural that officials and residents of that or any other county should defend the good name of their county. It would be surprising and against human nature if they did not.

But in this case the counter affidavits, with their accumulated negative statements, should not overbalance the positive statements of facts of the defendant; it is the weight of the evidence rather than the number of witnesses that controls, just as it is a rule of evidence that the affirmative statements of persons who swear to the existence of facts are entitled to a greater credence than are the statements of many persons who merely deny the existence of the fact or facts in dispute.

Here a whole *posse comitatus,* residents of Powell County, were hunting for the suspect, Wilbur C. Cook. He was found, but was not arrested to be tried in a lawful manner. Yet he was surrounded by some fifteen armed men, who upon sight opened fire and Wilbur C. Cook was killed.

Can anyone say that the hatred, and the feeling and prejudice of the people of Powell County being aroused to such a fever pitch against Wilbur C. Cook would not naturally carry over against the interests and wishes of Wilbur C. Cook, represented by the person standing in Wilbur C. Cook's shoes and stead as executor? To ask the question is to answer it; of course human nature being what it is, the people of Powell County would be unconsciously prejudiced against his representative in only a lesser degree than against Cook himself, if he were

present. Under the circumstances here this trial will still be against Wilbur C. Cook, his will and wishes, and not against William McGillvray.

Every seasoned trial lawyer knows of his own knowledge and experience of similar circumstances that this is true.

It is of the utmost importance that the constitutional and statutory rights of a person to a fair and impartial trial should be recognized, protected and preserved on the defendant's account in the first instance, and secondly so that public *faith* and *assurance* in our judicial institutions remain inviolate, for nothing will so quickly destroy confidence in the justice of our courts or so quickly destroy law and order as would a belief that unfairness and injustice dominated our courts. Under our Code of Civil Procedure of 1895, the original applicable statute (section 615) for change of venue which was taken word for word from California, whose statute (section 397) still reads the same, which as pertinent here, reads as follows:

"The court *may*, on motion, change the place of trial in the following cases: * * *

"2. When there is reason to believe that an impartial trial cannot be had therein." Emphasis supplied.

This law remained in effect until 1903 at which time the governor of Montana requested the Eighth regular session of the Montana Legislative Assembly to pass three fair trial laws, one was for the disqualification of district judges (now section 93-901), one was for the adequate change of venue (now contained in R.C.M. 1947, section 93-2906), and the third, making it the duty of the supreme court in equity cases or matters and proceedings of an equitable nature to review all questions of fact as well as questions of law, etc. (now contained in R.C.M. 1947, section 93-216).

The regular session of 1903 failed to pass the above-mentioned fair trial laws, whereupon the governor called the legislature back in extraordinary session, they still failed to pass the same, and adjourned. Again the governor called them back to the Second Extraordinary Session of 1903 at which session

the three fair trial laws were passed as Chapters 1-3 of the Second Extraordinary Session Laws of the State of Montana, and became the law of Montana on the subjects therein respectively treated.

It is therefore very pertinent to note in regard to the question presented here, whether or not this defendant is by right and by law entitled to an order changing the place of trial.

It will be observed that section 615 of the Civil Code of Montana of 1895 was materially and effectively amended by Chapter 2 of said Second Extraordinary Session of 1903, by striking the permissive word *"may"* and substituting the mandatory word *"must"* therein so that the section (93-2906) after the amendment now reads:

"The court or judge *must,* on motion, change the place of trial in the following cases: * * *

"2. When there is reason to believe that an impartial trial cannot be had therein." Emphasis supplied.

The provisions of that section are mandatory and require the district judge to change the place of trial after a meritorious motion and pleading has been filed. The court cannot act of its own motion but only after the motion therefore and pleading are filed. See Justice Holloway speaking for this court in State ex rel. Gnose v. District Court, 30 Mont. 188, 75 Pac. 1109.

When, as here, there were so many affidavits filed in the matter on both sides showing such a difference in reasoning and when this court is divided on the matter surely there is *reason to believe that a fair and impartial trial cannot be had by the defendant in Powell County.* Never was a case more demonstrative of the reason for the legislature to enact the amendment to section 615 of the Civil Code of Montana of 1895, as set forth in Chapter 2, Ex. L. 1903, now R.C.M. 1947, section 93-2906.

The statute being mandatory it requires a change of venue wherever it is shown that there is any "reason to believe" that a *fair and impartial trial cannot be had.*

The right to a fair and impartial trial is a valuable right and

was derived from the English law, where it was early recognized that people and juries, under emotional pressures of local happenings, might be thereby controlled by unconscious prejudices produced by the happenings. Every seasoned trial lawyer has in his career participated in at least one such case that had aroused the local community to such a pitch that a fair and impartial trial could not be had in the county. The failure to adhere to the true legislative intent, in such a matter, weakens the respect of our judicial tribunals.

. It was to prevent such injustices under these conditions that the legislature made *mandatory* the disqualification of district judges and the change of place of trial and thereby insure a fair and impartial jury to try such cases and insure an impartial trial and establish justice. It is of the utmost importance that the constitutional and statutory rights of every person be recognized, and safeguarded on every occasion, so that the public may honestly believe and know that justice and fairness prevails in our courts. *Whenever there is any showing* that a person may not have a fair and impartial trial, a change of place of trial must be granted to avoid all doubt. Where minds might reach different conclusions as to whether or not the defendant can have a fair and impartial trial, as here, this court should in all fairness reverse the order of the district court and order a change of the place of trial to a county not adjacent to Powell County so as to assure the fair and impartial trial which is guaranteed to every person by our constitition and the above mandatory statute. I would so order.

MR. JUSTICE ADAIR: (dissenting).

I concur in MR. JUSTICE BOTTOMLY'S foregoing dissent.

The statute which here governs is section 93-2906, R.C.M. 1947. It commands and requires that "The court or judge *must,* on motion, change the place of trial in the following cases: * * *.

"2. When there is reason to believe that an impartial trial cannot be had therein. * * *." Emphasis supplied.

The word *"must"* as used in this statute means *"must"* and not "may."

The district court *"must * * * change the place of trial"* on the timely and proper motion and strong showing made before it by the defendant William McGillvray. So says the statute, section 93-2906, supra.

In Merchants Credit Service, Inc. v. Chouteau County Bank, 112 Mont. 229, 233, 114 Pac. (2d) 1074, 1076, this court held that where, in a statute the word *"must"* is used in imposing a duty upon a public officer, it is mandatory and peremptory, —it excludes direction and it imposes upon him an absolute duty to perform the requirement of the statute.

In State ex rel. O'Connor v. McCarthy, 86 Mont. 100, 108, 282 Pac. 1045, 1048, being a cause involving the power of a public officer and whether a particular duty prescribed by statute was mandatory or directory, this court held that since in said statute "the Legislature used the verb 'must', which denotes 'obligation,' as, 'we must obey the laws' (Webster), and, when used to impose a duty, it is mandatory and peremptory, excludes discretion, and imposes upon the officer an 'absolute duty to perform the requirements of the statute in which it is employed'."

In State of California v. Superior Court of City and County of San Francisco, 14 Cal. App. (2d) 718, 58 Pac. (2d) 1322, 1324, the trial court failed and refused to make an order granting the attorney general's written demand to transfer the action to the County of Sacramento which demand was made pursuant to an express statute (Cal. Pol. Code, section 688, par. 4) which, so far as here pertinent, provided: "It shall be the duty of the attorney general to defend all such suits; and upon his written demand made at or before the time of answering, the place of trial of any such suits *must* be changed to the county of Sacramento." Emphasis supplied. There the appellate court said: "The word 'must,' as ordinarily used, is man-

datory. 44 C.J. 1498. An order contrary to the provisions of such statutes is in excess of jurisdiction. 59 C.J. 304; Carter v. Superior Court, supra [176 Cal. 752, 169 Pac. 667]."

Every litigant is entitled to a *fair trial*. This means a trial, open, impartial and in due accord with the established rules of law. In a jury case, such as this, there must not only be a fair and impartial jury and a learned and upright judge to instruct the jury and rule upon the legal questions that arise, but there should also be an atmosphere of calm wherein the witnesses may give their testimony without fear or intimidation and wherein the counsel engaged in the trial may assert his client's rights freely and fully and wherein truth may be received, weighed and given credence without fear of violence. See Fisher v. State, 145 Miss. 116, 110 So. 361, 365.

"One essential concept of a *fair trial* is that no outside influence shall be brought to bear upon the jury, and that no evidence shall be considered by them other than that presented and admitted on trial of the case." Emphasis supplied. Hinton v. Gallagher, 190 Va. 421, 432, 57 S.E. (2d) 131, 136.

In August 1957, Wilbur C. Cook at the barn on his own ranch in Powell County was summarily tried, adjudged guilty and forthwith executed by a *posse comitatus* formed from the citizens of Powell County and commanded by the sheriff of that county.

William MvGillvray, the defendant herein, is the duly appointed, qualified executor of the last will of the above-named decedent, Wilbur C. Cook. As the party defendant in this suit, William McGillvray is entitled to a fair trial to be held in an atmosphere of calm and before a fair and impartial jury to be drawn elsewhere than from the *posse comitatus* of Powell County. To this end defendant's motion for change of the place of the trial herein should be granted. The law so commands.

## ON MOTION FOR REHEARING

MR. JUSTICE ANGSTMAN:

On motion for rehearing it is suggested that the effect of ▮ our decision is to deprive defendant, as executor, of a defense which was available to Wilbur C. Cook contrary to section 93-2824, R.C.M. 1947.

A motion seeking a change of venue under section 93-2906 is not a defense within the meaning of section 93-2824.

The executor, like any other defendant, may have a change ▮ of place of trial under section 93-2906 upon a proper showing that "there is reason to believe that an impartial trial cannot be had" in the county wherein the action is pending. Here the evidence showing prejudice is sharply denied and, as pointed out in the opinion, it does not appear that the court abused its discretion in denying the motion.

It is also contended that the majority opinion herein places a greater burden on defendant than should be required, when we permitted defendant to renew his motion if it be found that a fair and impartial jury could not be obtained.

Appellant contends that this rule conflicts with the case of State v. Spotted Hawk, 22 Mont. 33, 55 Pac. 1026, 1031. The facts in this case are not comparable to those involved in that case. In the Spotted Hawk case there was a strong showing of prejudice not only against the defendant but against the tribe of Indians of which defendant was a member. People in all parts of the county armed themselves and threatened to exterminate the tribe of Indians. The court in that case recited the facts showing prejudice against defendant as shown by his affidavit as follows: "That the people were greatly excited in all parts of the county; that cowboys and ranchmen to the number of 200 had left their homes, and gathered at a ranch, near the Cheyenne Indian Agency; that these men were armed; that they had gathered together to force the Indian agent to surrender the murderer of Hoover, claiming that the murderer was a member of this tribe; that it was their intention, if the

murderer was not surrendered, to go upon the reservation, and exterminate the tribe; that they, in furtherance of this object, gathered ammunition and rifles from Miles City and eastern cities; that cartridges and rifles were sent to them from other parts of the county; * * * that the excitement was so great that the military authorities sent several companies of soldiers to prevent an outbreak." The court indicated that in many respects these statements were corroborated.

There were newspaper articles complained of also, and as to these the court said: "The newspaper clippings introduced at the hearing are of no value whatever as evidence of the facts and statements set forth in them; but, mindful of the hereditary enmity and antipathy existing between the whites and the Indians wherever they have lived in proximity with each other in this western country; mindful, also, of the fact, which is a matter of history, that there have during recent years been troubles between the whites and the Indians in various parts of the country,—the fact that these publications were made during a period of five weeks, extravagant and inflammatory in their character, would lead one to believe that the readers of them would be more or less excited by the statements contained in them."

The publications and radio broadcasts here complained of cannot be characterized as calculated to do more than give an account of the events as they occurred and of course were and are of no value as evidence of the facts and statements made.

The court in the Spotted Hawk case after referring to the facts recited in defendant's affidavit said: "If these statements of the defendant were not true, it could easily have been shown that they were not. They are not seriously controverted."

Here every fact indicating any prejudice on the part of the public against Cook is denied. Here, unlike the Spotted Hawk case, there was no action by the public indicating any prejudice against Cook. This being a civil case, there seems to us no basis upon which to hold that an impartial trial cannot

be had in Powell County or that the trial court abused its discretion in denying the motion for change of venue.

The showing that there exists no ''blaze of excitement and passion'' (which was the basis of the holding in the Spotted Hawk case) against Cook or the executor of his estate was at least as strong as the showing that there was such excitement.

We call attention again to the fact that the posse that was drawn by the sheriff was called to apprehend Cook and not to kill him.

We think every right of defendant is protected here, under the showing made, by permitting a renewal of the motion for change of place of trial if it appears at the trial that a fair and impartial jury cannot be obtained, particularly since it is now two years and nine months since the events took place and more than one year and seven months since this action was commenced and the order appealed from was entered. Prejudice, if any, may have subsided with the passage of time. State v. Searle, 125 Mont. 467, 239 Pac. (2d) 995.

The motion for rehearing is denied.

MR. JUSTICE CASTLES, and THE HONORABLE GUY C. DERRY, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON.

MR. JUSTICE BOTTOMLY:

I dissented when the majority opinion was handed down. In my opinion, my dissent stated the law applicable therein that section 23-2906, R.C.M. 1947, is mandatory. A change of place of trial should be granted.