Parker, C. J.
The first question to be settled in this action is, whether the Court has jurisdiction by appeal in this particular pro *252 cess, it being contended, by the counsel for the defendant, that it is not within the description of cases mentioned in the act establishing the Circuit Courts of Common Pleas, respecting which the right of appeal is given to the aggrieved party. And if the appellate jurisdiction of this Court depends altogether upon that statute, it is clear that this appeal cannot be sustained; as the cases provided for are only real actions, and personal actions in which the debt or dam age demanded shall exceed the sum of 100 dollars. [ * 274: ] * The form of the writ de homine replegiando does not admit of an allegation of damages, nor does the statute providing this remedy contemplate the recovery of any damages by the suffering party.
But the right of appeal to this Court does not depend altogether upon that statute, which seems to have been enácted rather with the view of regulating the preexisting right, and limiting it, in personal actions, to demands of a certain value, than of describing the cases only when it shall exist. For it is inconceivable that the legislature should have indulged litigating parties with a revision of their causes before the highest tribunal, when land of the least value, or a personal demand barely exceeding 100 dollars, should be in dispute, and refuse it where the personal liberty of the citizen was in question. Nor is it probable that actions of replevin for property of large amount, but wherein the damages for taking or detention may be small, were intended to be left to the ultimate decision of the Courts of Common Pleas without appeal; or that the party appealing was to be punished in costs, if his damages were found to be less than a hundred dollars, although the judgment may have determined his right to property worth many thousands.
The act establishing a Supreme Judicial Court within this com mon wealth gives cognizance to that Court of all pleas, real, personal, or mixed, and of all civil actions between party and party, &c., brought legally before the said Court, by appeal, review, writ of error, or otherwise. (3) The act establishing a Court of Common Pleas provides that any party aggrieved at the judgment' of the Court of Common Pleas upon any action, &c., may appeal therefrom, &c. (4) These two acts, together with the act establishing a Court of General Sessions of the Peace, (5) and the act determining the power of justices of the peace in civil actions, (6) all passed within a short time afier the adoption of our constitution, formed the judicial establishment of the state; and the judicial power was thug distributed among the several tribunals.
*253 * Subsequent statutes have altered the organization [ * 275 ] of these several courts, and in some instances have made a different distribution of their powers and duties; but, except as to the Court of Sessions, they have all been continued in existence; and their powers originally given by the legislature remain, unless expressly, or by clear implication, taken away by statute. The Supreme Judicial Court, then, had, until the act for establishing Circuit Courts of Common Pleas passed, appellate jurisdiction of all actions originally cognizable by the Court of Common Pleas, except those wherein the right had been restricted. This last-znentioned act established a new modification of the Courts of Common Pleas, transferring all the jurisdiction, which before existed in the old court, to the new one, but leaving the court itself ir, existezzce, there being no clause repealing the ■ preexisting act; st that a mere l'epeal of the act establishing the Circuit Court of Com mon Pleas would restore all the power and duty of the old court without any specific provision for that purpose.
The provision in the first act, giving the right of appeal in ah actions, remains also in full force, except so far as it may have been limited or modified by subsequent statutes ; and as there i» no statute taking away, either expressly or by strong implication, the right of appeal in the action de homine replegiando, or of re plevin of property, we must consider that provision still in force. This construction will relieve us from the necessity of supposizzg that the legislature had secured to parties the right of appealing in matters of inconsidei'able value, and deprived them of that right in matters of the highest moment.
It has already been determined, in this Court, (7) that, although the statute gives an appeal from all judgments of the Court of Comznon Pleas, that the term judgment is there to be understood as extending to all orders of the court which are calculated to terminate the suit, such as an order to stay all proceedings, &c. ; otherwise the Court of Common Pleas, by refusing to enter a reg ular judgment, might oust this Court of its appellate juz-isdiction, given for the security *of the citizens. An [ * 276 ] appeal well lies, therefore, in this case, from the order of the Court of Common Pleas for dismissing the action, (a)
We must now consider the motion made at the Common Pleas to diszniss this action, because there was no legal service of the writ, and because the writ does not agree with the form prescribed in the statute.
*254 The first cause is the one deserving most notice ; because, if by law a deputy sheriff could serve the writ, we do not think that an addition to the words of the statute form, designed only to designate the officer intended to be employed, would vitiate the process. It is obvious that the forms, contained in several of our statutes for regulating civil processes, were not intended to be followed verbatim et literatim. In some instances, an attempt to do this would produce absurd consequences.
If it were manifest, by the statute, that any officer other than the sheriff could perform the service, a designation of the officer thus authorized, although not making a part of the form of the writ as prescribed in the statute, could amount to nothing more than surplusage, which might be rejected. But as the statute conferring powers upon sheriffs and their deputies (8) contemplates a direction to them in the writ or warrant, and as, where a coroner is to be employed, it is provided that the precept may be directed to that officer, and so also to a constable, when he is called upon to do the duty, it may be considered necessary that there should be a particular direction to the officer, even in cases where his authority to serve is expressly recognized by statute. And the Court deemed of that opinion in the case of Hearsy vs. Bradbury, (9) where a constable had served a writ, the ad damnum of which did not exceed 70 dollars, the writ not being directed to a constable. Exception being taken to the service, leave was given to amend, by inserting such direction. This case proves that a direction is necessary, even where the officer acts within his lawful authority; and it proves, also, that the want of such a direction may be supplied, as a matter of form, by leave of Court, (a)
[ * 277 ] * Can, then, a deputy sheriff by law make service of the writ de homine replegiando, which is provided by statute ?
Upon a critical inspection of the statute, we find that the sheriff is alone mentioned as the officer who is to execute the process The form of the process also, which contains a direction to the sheriff only, although not conclusive evidence of the intention of the legislature, may be considered as in some measure indicative of that intention. It is also found that, with the exception of a few processes, of which this of replevying the person is one, all the forms of writs and processes established by statute contain a direction to the sheriff or his deputies, and that in the statute of replevins there is a particular provision that, where the sheriff or his *255 deputy may be parties or interested, the writ may be directed to a coroner ; (10) strongly implying that such direction is essential to his authority, although, by a previous statute, coroners were authorized to serve all precepts in which the sheriff or his deputy should be parties or interested. (11) From all which circumstances we apprehend that the forms contained in the statutes were prepared with care; and that there was a cause for the distinction between those in which the mandate is to the sheriff and his deputies, and those in which it is to the sheriff only.
It is to be presumed that the framers of these laws had their eye upon the distinction existing between those duties of the sheriff which are merely ministerial and those which partake in some measure of a judicial quality; having reference to the common law principle, that, in all the judicial parts of his office, the sheriff must act in proprio persona, and also in the execution of commissions particularly directed to him, but that all official acts merely ministerial may be performed by his under sheriff or deputy. (12)
The cases which appear to have been selected by our legislature, as those which ought to be confided to the sheriff only, were sup posed in some degree (although some of them very slightly) to impose judicial authority upon him. *The [ * 278 ] process for recovery of damages. for flowing lands is an instance (13) in which the sheriff is to preside in the trial of the question before the jury, must decide on the admissibility of testimony, and perhaps on the competency of jurors. Here he acts as judge, and it would be highly improper that he should be permitted to delegate his trust, (a) In the process of entry and detainer also, which is another case where the duty is confined, by the words of the statute, to the sheriff himself, a warrant under the hands and seals of two justices is required to be directed to him, manifestly with the design to impose the necessity of his personal execution of the duty. (14)
. The process we are now considering is another in which the mandate is confined to the sheriff himself; and although it is not so obvious as in the other instances, that the legislature had regard to the judicial authority of the sheriff, yet even in this instance it will be found that some of the duty imposed by the statute upon the sheriff is clearly of a judicial nature. I refer to his obligation to *256 take recognizance of the party and his sureties, and to return the same into court, — an act which is always done by a court or some judicial magistrate.
Upon the whole, therefore, we consider that the form of the process prescribed in this case, together with the whole purview of the statute, and the analogy to other statutes where the like provision is made, all show that the legislature intended that this process should be served by the sheriff only; except in cases where he may be a party, and then under the general provisions for such cases, by a coroner.
We can perceive great inconvenience resulting from this opinion, especially in large counties, where several causes of complaint may exist at the same time. This inconvenience applies also [ * 279 ] to all the other processes, as well as to this * de homina replegiando; but our duty is jus discere, not jus dare, and to leave to the legislature the removal of inconveniences.
The prayer of the defendant in this action, to have the plaintiff restored to his custody, cannot be granted. There is, in truth, no case before us upon which such an order can be passed. If the custody was legal, the defendant must take his own course to repossess himself, or he may resort to his action upon the bond, or to such other remedy as he shall be advised to; with respect to which we give no opinion, confining ourselves to the decision that an appeal in such case may be sustained in this Court, and that, for want of a legal service of the writ, tire action was properly dismissed at the Court of Common Pleas, and must now be dismissed from the docket of this Court, (a)

 Stat. 1782, c. 9.

 Stat. 1782, c 11.

 Stat. 1782, c. 14.

 Stat. 1784, c. 42.

 4 Mass. Rep. 107, Lamphear vs. Lamprey.

 Purple vs. Clarke & Al. 5 Pick. 206.

 Stat. 1783, c. 44.

 9 Mass. Rep. 95.

 Campbell vs. Stiles, 9 Mass. Rep. 217.— Commonwealth vs. Parker, 2 Pick 550 —Vide Brier vs. Woodbury, 1 Pick. 366.

 Stat. 1789, c. 21, § 1.

 Stat. 1783, c. 43, § 1.

 Cro. Eliz. 294. — Dalt. Sher. 103, 104.

 Stat. 1795, c. 74, § 2.

 By the statute of 1786, c. 67, § 4, where one, aggrieved by the doings of a committee for laying out a highway, applies to the Sessions for relief, such application is to be heard by a new committee, or by a jury to be summoned by the sheriS or his d&puty.

 Stat. 1784, c. 8, § 2.

 Tappan vs. Bruen, 5 Mass. Rep. 193. — Lamphear vs. Lamprey, 4 Mass. Rep. 107. — Bemis vs. Faxon, 2 Mass. Rep. 141. — Rathbone vs. Rathbone, A Pick. 89.— Purple vs. Clarke, 5 Pick. 206. — Hemenway vs. Hicks, 4 Pick. 497. — Blood vs Kemp, 4 Pick. 179. — Davis vs. Mason, 4 Pick. 156.