## Frank B. Sanborn *vs.* Silas Carleton.

A warrant issued by order of the senate of the United States for the arrest of a witness for contempt in refusing to appear before a committee of the senate, and addressed only to the sergeant at arms of the senate, cannot be served by deputy in this commonwealth.

Habeas corpus. The respondent in his return described himself as " the deputy of Dunning R. McNair, sergeant at arms of the senate of the United States of America," and justified under a warrant which is copied in the margin.*

* By authority of the Senate of the United States, in the Senate of the United States.

To Dunning R. McNair, sergeant at arms of the senate of the United States.

Whereas F. B. Sanborn, of Concord in the State of Massachusetts, was on the sixteenth day of January A. D. 1860 duly summoned to appear and testify before the select committee of the senate " to inquire into the facts attending the late invasion and seizure of the armory and arsenal of the United States at Harper's Ferry in Virginia by a band of armed men," and has failed and refused to appear before said committee pursuant to said summons : And whereas the senate did on the fifteenth day of February A. D. 1860 by a resolution direct the president of the senate to issue his warrant to the sergeant at arms, commanding him to take into his custody the body of the said F. B. Sanborn, wherever to be found, and to have the same forthwith before the bar of the senate to answer for contempt of the authority of the senate in thus failing and refusing to appear before said committee :

You are therefore commanded to take the body of the said F. B. Sanborn, wherever found, and forthwith have the same before the bar of the senate to answer for contempt of the authority of the senate in thus failing to appear before its committee.

In testimony whereof I have set my hand and seal of the Senate of the United States this 16th day of February 1860.

JOHN C. BRECKENRIDGE,

Vice President of the United States and President of the Senate.

Attest: ASBURY DICKINS,

Secretary of the Senate of the United States.

Senate Chamber, February 16, A. D. 1860. I do appoint and hereby empower Silas Carleton to serve this warrant, and to exercise all the authority in relation thereto, with which I am vested by the foregoing.

D. R. McNAIR,

Sergeant at Arms of the Senate of the United States.

The case was argued on the 4th of April, before *Shaw, C. J., Metcalf, Bigelow, Merrick,* and *Hoar,* JJ., by *J. A. Andrew & J. S. Keyes,* ( *S. E. Sewall* with them,) for the prisoner, and by *C. L. Woodbury,* District Attorney, and *M. Andros,* Assistant District Attorney of the United States, for the respondent, upon grounds which are stated in the opinion delivered on the same day by

SHAW, C. J.    This arrest was made by Silas Carleton, a citizen and inhabitant of Massachusetts; and in his answer under oath, he shows a warrant to Dunning R. McNair, sergeant at arms of the senate of the United States, and says that the sergeant at arms entered an order upon it, delegating the power to Carleton to make the arrest.    There is therefore no conflict in this case between the authority of an executive officer of the United States and an officer of this commonwealth.

It appears by the answer of the officer, which stands as part of the return to the writ of *habeas corpus,* that Carleton claims to have arrested Sanborn, under a warrant purporting to have been issued under the hand and seal of the vice president of the United States and president of the senate.    It recites the appointment of a committee of the senate to inquire into the circumstances of the attack made by a body of men upon the arsenal of the United States at Harper's Ferry; the citation of Sanborn to answer as a witness before such committee; that he refused to attend according to such summons; that he was thereby guilty of a contempt; and directing Dunning R. McNair, sergeant at arms of the senate, to arrest the said Sanborn, wherever he could find him, and bring him before the senate to answer for such contempt.    This warrant seems to have been issued on the 16th of February last.    There is an indorsement · of the same date, by the sergeant at arms, authorizing and empowering the said Carleton, the respondent, to make such arrest; and the respondent justifies the arrest made on the 3d April instant under that process.    The question is whether this arrest is justified by this return.

This question is a very broad and a very important one, and

Sanborn *v.* Carleton.

opens many interesting questions as to the functions and powers of the United States senate, as a constituent part both of the legislative and executive departments of the United States government, and the modes in which they are to be exercised, and the limits by which they are qualified.

It is admitted in the arguments that there is no express provision in the Constitution of the United States, giving this authority in terms; but it is maintained that it is necessarily incidental to various authorities vested in the senate of the United States, in its legislative, executive and judicial functions, and must therefore be held to be conferred by necessary implication.

These questions manifestly requiring great deliberation and research in order to come to a satisfactory conclusion, and some preliminary questions having been suggested by the petitioner's counsel, it was proposed, and not objected to by the learned district attorney and assistant district attorney of the United States, by whom the court were attended in behalf of the respondent, to consider these preliminary questions first; because, if the objections, on the face of them, were sustained, it would supersede the necessity of discussing the other questions arising in the case. These points have been argued.

For obvious reasons, we lay out of this inquiry the case of the senate, when acting in their judicial capacity, on the trial of an impeachment laid before them by the house of representatives; and we suppose the same considerations would apply to the case of the house of representatives in summoning witnesses to testify before them, as the grand inquest of the United States, with a view to an impeachment.

Then the objections taken to this warrant, as apparent on the face of it, as rendering it insufficient to justify the arrest of the petitioner, are three.

1. That the sergeant at arms, in his capacity as an officer of the senate, had no authority to execute process out of the limits of the District of Columbia, over which the United States have, by the Constitution, exclusive general jurisdiction.

2. That a sergeant at arms is not an officer known to the

Constitution or laws of the United States, as a general execu-
tive, of known powers, like a sheriff or marshal; that he is
appointed and recognized by the rules of the senate as an
officer exercising powers regulated by the rules and orders of
the senate, and can only exercise such powers as are conferred
on him by such general rules and orders, made with a view to
the regular proceedings of the senate; or such as may be con-
ferred by the senate by special resolves and acts, as a single
department of the government, without the concurrence of the
other members of the government.

3. That by the warrant returned, the power to arrest the
respondent was in terms limited to McNair, the sergeant at
arms, and could not be executed by a deputy.

In regard to the first, it seems to us that the objection as-
sumes a broader ground than it is necessary to occupy in decid-
ing this preliminary question. We are not prepared to say
that in no case can the senate direct process to be served beyond
the limits of the district, by an authority expressly given for
that purpose.

The case of *Anderson* v. *Dunn*, 6 Wheat. 204, cited in the
argument, has little application to this question. It is manifest
that that was a writ of error from the circuit court for the
District of Columbia, and it appears that the alleged contempt
of Anderson in offering a bribe to a member of the house of
representatives was committed in the District of Columbia,
the act complained of as the trespass was done therein, and the
process in question was served therein. In that case the process
was served by the sergeant at arms in person, under an express
authority given by the house of representatives, by their re-
solve for that purpose, in pursuance of which the speaker's
warrant was issued.

The second question appears to us far more material. The
sergeant at arms of the senate is an officer of that house,
like their doorkeeper, appointed by them, and required by their
rules and orders to exercise certain powers, mainly with a view
to order and due course of proceeding. He is not a general
officer, known to the law, as a sheriff, having power to appoint

general deputies, or to act by special deputation in particular cases; nor like a marshal, who holds analogous powers, and possesses similar functions, under the laws of the United States, to those of sheriffs and deputies under the State laws.

But even where it appears, by the terms of the reasonable construction of a statute, conferring an authority on a sheriff, that it was intended he should execute it personally, he cannot exercise it by general deputy, and of course he cannot do it by special deputation. *Wood* v. *Ross*, 11 Mass. 271.

But, upon the third point, the court are all of opinion that the warrant affords no justification. Suppose that the senate had authority, by the resolves passed by them, to cause the petitioner to be arrested and brought before them, it appears by the warrant issued for that purpose that the power was given alone to McNair, sergeant at arms, and there is nothing to indicate any intention on their part to have such arrest made by any other person. There is no authority in fact given by this warrant, to delegate the authority to any other person. It is a general rule of the common law, not founded on any judicial decision or statute provision, but so universally received as to have grown into a maxim, that a delegated authority to one does not authorize him to delegate it to another. *Delegata potestas non potest delegari.* Broom's Maxims (3d ed.) 755. This grows out of the nature of the subject. A special authority is in the nature of a trust. It implies confidence in the ability, skill or discretion of the party intrusted. The author of such a power may extend it if he will, as is done in ordinary powers of attorney, giving power to one or his substitute or substitutes to do the acts authorized. But when it is not so extended, it is limited to the person named.

The counsel for the respondent asked what authority there is for limiting such warrant to the person named; it rather belongs to those who wish to justify under such delegated power, to show judicial authority for the extension.

On the special ground that this respondent had no legal authority to make the arrest, and has now no legal authority to detain the petitioner in his custody, the order of the court is that the

*Said Sanborn be discharged from the custody of said Carleton.*