FIRST NATIONAL BANK OF PARSONS v. G. W. FRANKLIN, *et al.*

1. SHERIFF'S FAILURE TO SELL PROPERTY; *Damages; Value of Property.* In an action against a sheriff for failing to sell under an order of sale, property of the defendant in his possession as such sheriff, the appraisement is only *prima facie* and not conclusive evidence of the value of the property.

2. DIRECTION OF PROCESS; *Alteration, When Made.* When it appears that an order of sale was originally directed to "Carl Bradley, Deputy-Sheriff," he being the officer who actually received the writ, and that a pen had been drawn through the first three words, leaving the process directed to the sheriff, and the justice who issued the process had no recollection concerning the matter, and there was no testimony showing when it was done, and no particular circumstances of suspicion surrounding the matter; and when it further appeared that said Bradley, as deputy-sheriff, had received the process, and having the goods in his possession, had duly advertised them for sale, and then permitted an

unauthorized person to carry them away, *held*, that such order of sale should have been admitted in evidence.

3. —————— *Held further*, That while the direction should have been to the sheriff, the direction to the deputy-sheriff was simply an irregularity, a defect subject to amendment, and not making void the writ; and that the officer having taken the writ and proceeded to execute it, could not set up such a defect as a defense to an action against him for failing to sell the property.

### Error from Labette District Court.

ACTION, brought by the *First National Bank of Parsons*, as plaintiff, against *Geo. W. Franklin*, J. F. Waskey, J. M. Davidson, H. P. Newlon, and U. B. Bridgman, defendants. The petition, after stating the due incorporation of the plaintiff, and the election and qualification of defendant *Franklin* as sheriff of Labette county, (including the execution of the official bond of such sheriff by *Franklin* as principal and the other defendants as sureties,) is as follows:

"And the plaintiff saith, that the said Franklin did thereupon take upon himself the duties of his said office of sheriff, and assumed to and did act as such officer at the time of the committing of the wrongs and grievances hereinafter mentioned. And plaintiff further shows and alleges, that in a justice's court, on the 22d of November 1873, before H. S. Partridge, Esq., who was at that time a justice of the peace of Labette county, the plaintiff, by the consideration of said court recovered a judgment against one C. S. Whitney for the sum of $241.13, and costs taxed therein at $13.15. At the time said judgment was rendered, and for twelve days thereafter, defendant Franklin had in his possession, of the property of the said Whitney, ten boxes, containing clothing, dry goods, notions, boots and shoes, of the value of five hundred dollars, which he had levied upon by virtue of an order of attachment which had been before that time sued out in that case; and on the 29th of November 1873, and while said property was in the possession of the sheriff as aforesaid, the said justice by whom the judgment was rendered, issued and delivered to the defendant Franklin, as such sheriff, an order, which order recited the fact of the judgment having been rendered, and the amount thereof, and the property remaining in the hands of such officer, and commanded him, that of the said goods and chattels remaining in his possession as

18—20 KAS.

aforesaid, he cause said judgment and costs to be satisfied as if said property had been levied on by execution, together with interest thereon, at the rate of seven per cent. per annum from the 22d of November 1873, and all accruing costs, and to make a certificate on said order showing his manner of executing, and to return the same into court within thirty days from the date thereof; that defendant Franklin did not satisfy said judgment and costs out of said goods and property, nor in any other way, but he wrongfully and unlawfully delivered said property to some person or persons to the plaintiff unknown, and that said goods and clothes were not afterward produced and sold by said defendant, or any person in his behalf, according to an advertisement before that time duly made of the time and place of such sale; nor have the same ever been produced by said defendant; whereby said goods and chattels became and were wholly lost, and the said plaintiff wholly unable to make his said judgment, interest, and costs, against the said Whitney, he having no other chattels, nor any lands or tenements out of which the same could be made, to the damage of plaintiff of $350.

"Wherefore, the plaintiff demands judgment against the defendants for the sum of three hundred and fifty dollars, its damages so as aforesaid sustained, and costs of this action."

The sureties served filed a general denial. Defendant *Franklin* answered as follows:

(*Title, and Court.*) "The said G. W. Franklin, answering for himself, denies each and every material allegation in said action not herein specifically admitted.

"And for a second and further defense, the defendant avers, that the said C. S. Whitney was, on or about the 1st of November 1872, declared by the U. S. District Court of the District of Kansas, in an action pending in which C. S. Whitney was impleaded, a bankrupt, under the laws of the United States, and an order of seizure issued thereunder against the goods of said C. S. Whitney, and the said goods were seized and taken thereunder, and without any collusion, fault, or neglect of the defendant."

All other material facts and proceedings are stated in the subjoined opinion. The district court, at February Term 1876, gave judgment for the defendants. Motion for new trial overruled, and the plaintiff brings the case here on error.

*Cory & Kimball,* for plaintiff.

*F. A. Bettis,* for defendants.

The opinion of the court was delivered by

BREWER, J.: This action was brought by the First National Bank of Parsons, against George W. Franklin and his bondsmen, upon Franklin's official bond, to recover damages for an alleged neglect of duty upon his part as sheriff of Labette county. The defendants filed a general denial. Judgment for defendants, on demurrer to plaintiff's evidence.

The facts are as follows: On the 3d of October 1873, the sheriff, by one Bradley, deputy, by virtue of an order of attachment issued by a justice of the peace in the case of the bank against one Whitney, levied upon and took into his possession certain goods, of the appraised value of $385. On the 29th of November following, judgment having been rendered against Whitney, the justice issued an order of sale, which it appears from the evidence was originally directed "To Carl Bradley, Deputy-Sheriff of said county," and that sometime—the record does not show when—a pen-stroke was drawn through the words, "Carl Bradley, Deputy." This order was delivered to Bradley, and was returned as follows:

"Nov. 29th 1873, Rec'd this writ; advertised for sale, the goods described in the inventory and appraisement. Dec. 3d 1873, the above-described goods were taken out of my possession by Chas. H. Hallett, U. S. Deputy Marshal.

"G. W. FRANKLIN, Sheriff Labette county,
                                        "*By Carl Bradley, Deputy.*"

Upon the trial of the cause the court excluded all testimony offered by plaintiff as to the value of the goods, except the sheriff's appraisement, holding that conclusive. The court also excluded the order of sale, and the return thereon, because, without the alteration, the order was void, being directed to the *deputy-sheriff;* and with the alteration it was void, there being no evidence showing that the alteration was made before delivery. The only testimony as to the erasure was that of the justice, who testified upon direct examination

that he did not know when the words were erased, that he had no recollection as to whether they were struck out when he signed the order, or of authorizing any person to strike them out, or whether the order was given to the plaintiff's attorney before it was given to Bradley; and upon cross-examination he added, that he would not say that the erasures were made before delivery, and that he had no idea that he erased the words. His docket, a transcript of which was in evidence, read—"Order of sale issued, dated, directed, and delivered to Carlos Bradley, deputy-sheriff." But he testified that the words, "directed and delivered," were printed on his docket, and that he usually entered on the blank opposite, the name of the person to whom he delivered it.

In each of these rulings we think the court erred. The appraisement was *prima facie* evidence of the value; but in an action against the officer, was not conclusive. If the goods had been sold, it is to be presumed that they would have brought their real value, and that real value is the measure of the sheriff's responsibility. The appraisement is but the opinion of the parties selected by the sheriff as appraisers. These appraisers may or may not have been fully acquainted with the market-value; but their estimate stands as the estimate of any other witness, and is to be judged by the same considerations as affect the testimony of others. If it were not so, it would enable a sheriff, in case of a low appraisement, to convert the property to his own use, and then pay over simply the appraised value, thus profiting by his own wrong. The law places no such temptation before an officer. The appraisement was never intended to be a conclusive test of values, or a shield to an officer's wrong. It is made *ex parte*, by persons selected by the officer, and as every one knows, is often wide of the exact truth.

In regard to the erasure in the order of sale, it is clear that the testimony fails to show when it was made. The justice evidently had no recollection upon the matter, and no other witness was called. And in respect to alterations, the general rule is thus laid down in Greenleaf on Evidence,

sec. 564, note 3 : "It is also generally agreed, that inasmuch as fraud is never to be presumed, therefore if no particular circumstances of suspicion attach to an altered instrument, the alteration is to be presumed innocent, or made prior to its execution"—and in support of this, many authorities are cited. And the rule is a reasonable one. Nearly every one can write, and written instruments are as abundant as the leaves of the forests. They are prepared by all sorts of persons—those skilled in the law, and those not—and cover all sorts of transactions. Pending negotiations, the original draft is subject to constant changes, and is as often signed with all the changes, erasures and interlineations, as it is copied for execution. The hurry of business will not wait for perfect copies without erasures or interlineations. The law must take things as it finds them, and adjust its rules to the facts of every-day life. To require in every case of change, proof that the change was made before execution, before the instrument is admissible in evidence, would tend to prevent rather than accomplish justice. It will be borne in mind that the more important the transaction, the more likelihood of parties waiting for a perfect copy, and of remembering the circumstances, or noting the fact of any alteration, while the less important the transaction, the less likelihood of waiting, or noting, or of remembering. Hence, evidence would be more accessible in the former than in the latter case, and at the same time less likely to be needed. So that the presumption, in the absence of suspicious circumstances, that the change was innocent, and made before execution, runs parallel with the actual experiences of business, and tends to uphold those transactions which stand in most need of such help.

Again: It must be noticed, that so far as the questions in this case are concerned, it is immaterial whether the process was in fact directed to the sheriff, or to Carl Bradley, deputy-sheriff. The former is of course the correct and formal direction of the writ; but the latter is simply an irregularity which the officer who has taken the writ and proceeded to

execute it cannot thereafter avail himself of as a defense. The execution was not void, but only voidable. The defect was one that could be amended. And whatever might be the rule, if the officer *refused* to take or execute the writ, he cannot, after taking it, and advertising the property for sale under it, plead this defect in bar of his liability for suffering the property to pass into the hands of an unauthorized person. He is estopped as fully as though he had sold the property, had the money in his pocket, and refused to pay it over to the plaintiff. (Herman on Executions, 202, sec. 146, and cases cited in note; *Walden v. Davison,* 15 Wend. 575; .*Bacon v. Cropsey,* 7 N. Y. 195, and cases cited in opinion of court.) And again, it may be remarked, that process of this kind ordinarily passes from the justice directly to the officer, and there is nothing in this case to indicate its possession by any intermediate person. Now if the justice made the erasure before delivering the process, it was unquestionably in due form, and valid. If the officer made it while in his hands, he could not thus defeat his liability. And if a stranger did it while in the officer's hands, it was a mere spoliation, and not an alteration, (1 Greenl. Ev., § 566;) and if done after it had been returned to the justice, the liability was already fixed, and could not be affected thereby. The probabilities as to time and person, are within these four suppositions; and in neither is the liability taken away from the officer. Finally, it may be remarked, that the question as to the time, and the party making any alteration, is, in the last instance, one for the jury. It is like any other fact in the case, to be settled by the triers of facts. We do not mean that it is not the right and duty of the court in the first instance to determine whether the alteration is so far accounted for as to permit the instrument to be read in evidence. Where there are manifest circumstances of suspicion, and no explanation given, it may be the duty of the court to refuse to let the instrument go before the jury; but where there are but slight circumstances of suspicion, or an explanation is tendered which is doubtful, then the court should permit the instrument to go

in evidence, and submit to the jury under proper instructions the question as to the time when and the person by whom the alterations were made. The time and the circumstances of an alteration are matters of fact, and not of law.

The judgment of the district court will be reversed, and the case remanded for a new trial.

All the Justices concurring.