MERCHANTS CREDIT SERVICE, INC., Appellant, *v.*
CHOUTEAU COUNTY BANK, Respondent.

(No. 8,143.)

(Submitted January 8, 1941.   Decided June 19, 1941.)

[114 Pac. (2d) 1074.]

230

*Mr. O. B. Kotz* and *Mr. Palmer Johnson,* for Appellant, submitted a brief; *Mr. Johnson* argued the cause orally

*Messrs. Miller & Wiley,* for Respondent, submitted a brief; *Mr. C. W. Wiley* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

An action for damages. November 7, 1935, the plaintiff in the action at bar was given a default judgment by the district court for Cascade county against Hildia Bernard Nottingham and Beulah Hall Nottingham; September 17, 1936, a writ of execution was issued out of that court directed to the sheriff of Cascade county, but sent to the sheriff of Chouteau county and was regularly served by the latter on the Chouteau County Bank, the defendant in the action at bar; the levy on the bank was without results and the writ was returned by the sheriff "wholly unsatisfied."

The complaint in this action was filed in Cascade county March 20, 1938; summons was issued the same day and served the 31st; April 8th the defendant filed a general demurrer to the complaint, and at the same time filed a motion for change of venue from Cascade to Chouteau county. The motion for change of venue, not being opposed, was allowed. Hearing on the demurrer was noticed June 7th for hearing June 20th; on the last named date the defendant withdrew the demurrer and filed a motion to dismiss the action; which motion was, on September 14th denied; September 17th the plaintiff, without notice to the defendant, obtained an order from the district court for Cascade county in the *Nottingham Case* amending the writ of execution, the effect of which amendment is the vital and sharply contested question involved in the controversy.

When the case was at issue and came on for trial in the district court, the parties stipulated that a jury be waived and the cause submitted to the court on an agreed statement of facts on briefs without oral argument. The facts agreed upon were, in substance, as follows:

1. That November 7, 1935, the plaintiff recovered judgment by default in the Eighth Judicial District in and for Cascade county against Hildia Bernard Nottingham and Beulah Hall Nottingham, which judgment is still held and owned by the plaintiff.

2. That on or about September 17, 1936, a writ of execution was issued out of the district court for Cascade county, directed to the sheriff of that county, but sent to the sheriff of Chouteau county, and was levied at the direction of the plaintiff by the sheriff of that county September 22, 1936, upon the defendant in this action.

3. That October 28, 1938, approximately two years after the alleged levy was made, an order was issued by a judge of the district court of Cascade county amending the execution writ. The wording of the order was as follows: ''The word 'Cascade' appearing in the direction of the said Execution Writ shall be changed to the word 'Chouteau', and the word 'said' appearing on the same line shall be changed to the word 'the', so that the

said line of direction shall read: 'To the Sheriff of the County of Chouteau, Greeting' ''. The defendant had no notice or knowledge of the motion to amend the writ.

4. That when the levy was made on the defendant, return was made by E. W. Harris, vice president of the defendant bank, to the effect ''the said bank had no property in its possession, nor under its control, belonging to said judgment debtors,'' and the writ was returned wholly unsatisfied.

5. When the levy was made on the defendant bank September 22, 1936, it had in its possession and under its control a deposit of $509.96 standing in the name of H. B. Nottingham.

6. H. B. Nottingham and Hildia Bernard Nottingham is one and the same person and Hildia Bernard Nottingham at times used and signed his name at H. B. Nottingham.

When the cause came on for hearing January 13, 1940, the stipulated facts were submitted to the court, as agreed and the matter was taken under advisement. May 21, 1940, judgment was made and entered in favor of the defendant and it was allowed costs in the sum of $25.50. The appeal is from the judgment.

A single specification of error is assigned under which a number of contentions are advanced, but we deem it unnecessary to go further than to determine whether or not a writ of execution directed to the sheriff of one county but sent to and served by the sheriff of another county and ordering him to levy upon property in his county creates a lien upon the property in the latter county. If such service was not valid service, plaintiff's action must fail.

Section 9417, Revised Codes, provides in part: ''The writ of execution must be issued in the name of the state of Montana, sealed with the seal of the court, and subscribed by the clerk, and must be directed to the sheriff.'' This means, of course, the sheriff of the county where process is to be served.

Section 9423, Revised Codes, provides: ''Where the execution is against the property of the judgment debtor, it may be issued to the sheriff of any county in the state. Where it requires the delivery of real or personal property, it must be

*issued to the sheriff of the county where the property,* or some part thereof, *is situated.* Executions may be issued at the same time to different counties." This statute is mandatory in form. (*In re Farrell,* 36 Mont. 254, 92 Pac. 785.)

Section 9260, relating to attachments, which in all essentials are practically the same as levies under a writ of execution, provides in part: "The writ *must be directed to the sheriff of any county in which property of such defendant may be.*"

In *Keith* v. *Ramage,* 66 Mont. 578, 589, 214 Pac. 326, 330, this court said: "Proceedings by attachment are statutory and special, and the provisions of the statute must be strictly followed, or no rights will be acquired thereunder."

In *State ex rel. O'Connor* v. *McCarthy,* 86 Mont. 100, 108, 282 Pac. 1045, 1048, where the court had under consideration a case involving the power of a public officer and whether a particular duty prescribed by statute was mandatory or directory, it was said: "The legislature used the verb 'must,' which denotes 'obligation,' as, 'we must obey the laws' (Webster), and, when used to impose a duty, it is mandatory and peremptory, excludes discretion, and imposes upon the officer an 'absolute duty to perform the requirements of the statute in which it is employed.' (*People* v. *Thomas,* 32 Misc. 170, 66 N. Y. Supp. 191, 193; *In re Farrell,* 36 Mont. 254, 92 Pac. 785, 787; *Ex parte Smith,* 152 Cal. 566, 93 Pac. 191; *Reinert Bros. Const. Co.* v. *Tootle,* 200 Mo. App. 284, 206 S. W. 422.) In the *Farrell Case,* Mr. Chief Justice Brantly, speaking for the court, said: 'It may be laid down as a general principle, that the limit of the power of a public officer is the statute conferring the power, and what further power is necessarily implied in order to effectuate that which is expressly conferred. In the performance of ministerial duties expressly enjoined, however, when the mode of performance is prescribed, no further power is implied, nor has the officer any discretion.' "

In *Fousek* v. *DeForest,* 90 Mont. 448, 459, 4 Pac. (2d) 472, 475, it was said, "When an attachment is made upon personal property in the possession of a third person (a garnishment), as here, it is sufficient to comply with the statute."

In *Sharman* v. *Huot*, 20 Mont. 555, 52 Pac. 558, 559, 63 Am. St. Rep. 645, it was said: "Where the law expressly directs that process shall be in a specified form, and issued in a particular manner, such a provision is mandatory, and a failure on the part of the official, whose duty it is to issue it, to comply with the law in that respect, will render such process void."

Referring briefly to other jurisdictions we find in *Sidwell* v. *Schumacher*, 99 Ill. 426, 433, it was said: "The legislature or the people, through the constitution, have the unquestionable right to say of what process shall consist, and when they have declared that it shall be of a specified form, by implication all other forms are prohibited."

In *Gordon* v. *Camp*, 3 Pa. 349, 45 Am. Dec. 647, it was said: "No case has been decided, that an execution directed to the constable of a particular township, can be handed over by him to the constable of another township, to whom it was not directed, and that the latter could legally execute it.  *  *  *  "

7 C. J. S. Attachment, section 204, reads: "The writ must be executed by the executive officer of the court, or of some court of similar jurisdiction in another county or district, to whom it is directed, and whose duty it is to obey the mandate contained in the process, and service of the writ by an officer not legally authorized is void."

In 4 Am. Jur. 872, section 528, it is said: "As a general rule, a writ of attachment can be levied only by the officer to whom it is directed, who, of course, must by law be duly authorized so to act, an attachment by an officer without authority of law being no attachment at all."

In 23 C. J. 404, section 181, it is said: "The direction in the writ to the officer, usually the sheriff, is what gives him his authority."

Under the writ involved here, the sheriff of Cascade county ▮▮▮▮ could have made a valid garnishment on property in that county, but in the hands of the sheriff of Chouteau county it was just another slip of paper. Service of process is provided for by statute. No statute can be found in our legislative Acts that authorizes a sheriff to serve a writ of execution directed

to the sheriff of another county. A sheriff's power to serve a writ is derived from a writ addressed to himself. Outside of his bailiwick a sheriff has no more power to serve process than a private citizen. The writ served on the defendant could be legally served only by the sheriff of Cascade county, or his duly authorized deputy, and legal levy on property thereunder could be made only in Cascade county.

On the question of the amendment of the writ: The sixty days mentioned in section 9419, Revised Codes, in which the writ must be served prescribe the life of the writ. If it be served and returned, or if it be not served within the sixty-day period, it is, in either case, *functus officio*. (1 Third Freeman on Executions, sec. 107; 23 C. J. 214, pp. 428, 429; note at page 181 of 2 A. L. R.) The amendment to the writ was not sought nor made for more than two years after it was served originally, and after amendment it was not served anew. The question here is not as to an amendment to a defective writ after it had been served, but an attempt to change a writ by amendment subsequent to service that was good in one county as issued but not good in the county where it was served. The fact is that the writ after amendment was, in effect, a new writ, and no attempt was made to serve the new writ.

Plaintiff relies chiefly upon the case of *Kipp* v. *Burton*, 29 Mont. 96, 97, 74 Pac. 85, 63 L. R. A. 325, 101 Am. St. Rep. 544, where it was held that a writ of execution upon which the clerk of the court failed to impress the seal of the court could be amended by impressing the seal thereon after service. What this court thought of that ruling is clearly expressed in an opinion by Chief Justice Brantly in *In re Farrell*, 36 Mont. 254, 263, 92 Pac. 785.

There is no merit to the contention that the "garnishee waived defects in the process by answering." All the authorities cited in support of this contention are cases in which the question involved was as to alleged waiver by a party defendant to an action who appeared in court and thereafter attacked service of process. Plaintiff confuses the return made to the writ in the case at bar with the appearance in court of a party to an

action. There is no relation between the two "appearances," if the return to the writ could be called an appearance. "Waiver is an intentional relinquishment or abandonment of a known legal right." (67 C. J. 289.) Only a general appearance in court in a regular action waives defects in process. (3 Am. Jur. 805, sec. 35; *Enterprise Sheet Metal Works* v. *Schendel,* 55 Mont. 42, 51, 173 Pac. 1059; *Swords* v. *Occident Elevator Co.,* 72 Mont. 189, 195, 232 Pac. 189.)

We deem further consideration of plaintiff's contentions unnecessary as they have no material bearing upon the questions involved.

The judgment is affirmed.

MR. JUSTICE ANDERSON, Concurring Specially:

The legislature undoubtedly had good reason for requiring a separate writ for each county. Whatever the reason for it, it is the law. And if the law means anything it is that a writ has no force and can be of no effect outside of the county for which it is issued. And that being true, anything done under it in an outside county is as if there were no writ in the hands of the officer acting. (*Bybee* v. *Ashby,* (Ill.) 2 Gilman, 151; 43 Am. Dec. 47; *Edwards* v. *Case,* 78 Or. 220, 152 Pac. 880; *Pillsbury* v. *Smyth,* 25 Me. 427; *Corrigan* v. *Kahn,* 120 Misc. 161, 198 N. Y. Supp. 785; *Huber* v. *Moran-Greenberg Corporation,* 120 Misc. 104, 198 N. Y. Supp. 434; Wade on Attachment, sec. 124; Freeman on Executions, sec. 65; 23 C. J. 404, sec. 182.) And in the levy upon property in the hands of a third party, as in garnishment, the voluntary answer or surrender of the property by the trustee, that is, the third party in whose custody the property may be, does not validate the levy. The trustee has no right to surrender the property under such circumstances, and his so doing cannot operate to the disadvantage of the judgment debtor. (Wade on Attachment, sec. 336; Freeman on Executions, sec. 65; Drake on Attachment, 7th ed., sec. 451B; *Raymond* v. *Rockland Co.,* 40 Conn. 401; *McDonald & Co.* v. *Moore,* 65 Iowa, 171, 21 N. W. 504; *Fletcher*

v. *Wear*, 81 Mo. 524; *Insurance Company* v. *Friedman Bros.*, 74 Tex. 56, 11 S. W. 1046.)

A defect in an attempted levy, such as in this case, cannot be remedied by amendment of the writ. The proper case for amendment as to the officer directed is where the writ is directed to an improper officer but executed by the proper officer, such as where the property sought to be reached is held under attachment by one officer and the execution writ is directed to another officer but is executed by the officer who holds under the writ of attachment. Or where a writ issues to the sheriff of the county and should have been issued to a constable but was delivered to and executed by the constable. In such cases there is no question about a mistake having been made in the issuance of the writ inasmuch as there was only the one officer who could execute it. The situation in such cases is entirely different from that in the instant case where the writ was regularly issued and was in proper form in every respect and was directed to a proper officer for its execution. The distinction is made clear in Freeman on Executions, section 65, where it is said: "Where a writ is directed to an improper officer, but executed by the proper officer, the error in the direction does not vitiate the writ, and may be cured by amendment. * * * Where the error is in directing the writ to the sheriff of one county, where it is intended to be delivered to the sheriff of another county, there is some doubt whether it can be amended so as to support proceedings taken in the latter county. In Illinois, it has been held that this is not a proper case for an amendment, and that, as the sheriff acted in the absence of any writ directed to him, a levy and sale made by him are incurably void." (Citing *Bybee* v. *Ashby*, supra. See to the same effect, 23 C. J. 422, sec. 199.)

The cases holding to a contrary view have nothing but specious argument and excuses rather than good sound reasons for the conclusions reached. As illustrative, in the case of *Christy* v. *Springs*, 11 Okl. 710, 69 Pac. 864, the court bases its conclusion on the fact that the sheriff had acted on the writ as though it were directed to him, and held that, inasmuch as the sheriff

made no objection, the question of improper or irregular process was immaterial. The court also speaks of the irregularity as being curable by amendment, citing as authority *First Nat. Bank* v. *Franklin*, 20 Kan. 264, 265; *Pecotte* v. *Oliver*, 2 Idaho, 251, 10 Pac. 302; *Clark* v. *Sawyer*, 48 Cal. 133, and Freeman on Executions, section 62. None of these citations is authority for the application to the facts in that case of the rule as to amendment of irregular process. The case does not appeal to me as well reasoned nor as well grounded in authority in its discussion of levies under erroneous or irregular writs. Furthermore, in that case there was return of the sale of the property levied on, which was real estate, and confirmation of the sale by the court. The sale was questioned in an action to quiet title commenced many years after, and was really a collateral attack on the decree of the court confirming the sale. Therefore the case is not in point here.

Upon close study of the authorities cited and relied upon by the appellant, it will be found that practically all of them either are not sound in the line of reasoning employed or that the facts involved and the questions presented are fundamentally different from those in the instant case.

And even though it should be held that the defect in the levy here could be remedied by changing the writ, the proper practice was not pursued in procuring the amendment. In Freeman on Executions, section 63a, the author says that where the defect sought to be remedied is clearly merely a clerical error and the case is free from doubt respecting the writ intended to be issued, the practice pursued in procuring the amendment is not material, but "If, on the other hand, the amendment sought is of so substantial a character, or of such doubtful propriety, that the rights of the parties may be affected by it, or, instead of being a matter of course, it is a matter upon which reasonable judges may differ, certainly the parties to be affected by it should be brought before the court by some notice warning them of the proposed action and giving them an opportunity to resist it. In the absence of such notice, they should not be held bound by the order granting leave to amend, nor

by the amendment made in pursuance thereof. We assume, therefore, that the proper practice of a person desiring to obtain leave to amend a writ in any substantial particular, and where leave does not follow as a matter of course from a mere inspection of the record, is to give written notice to all persons apparently to be prejudiced by the amendment, that an application will be made to the court at a time stated for leave to amend the writ in a manner designated in such notice.'' In the present case the order amending the writ so that it was changed to read in its direction ''To the Sheriff of Chouteau County'' was made without any notice to the bank, the defendant in this action, and more than two years after the attempted levy on which it is sought to hold the bank, and after the commencement of the present action which was then pending in another court and in another county. Clearly the amendment would be prejudicial to the bank, the respondent in this appeal, and for lack of notice did not become, and is not, binding, upon the respondent.

The plaintiff failed to make out a case against the defendant. There was no legal levy and plaintiff acquired no lien upon the defendant's money in the bank. No matter what the bank's answer to the writ was, nothing was acquired and no right was acquired by the plaintiff by the levy attempted. Had the bank answered that it had money belonging to the defendants, such answer would not have validated the levy and given the plaintiff any lien. ''Garnishment rests wholly on judicial process, and depends on the due pursuit of the steps prescribed by law for its prosecution. It can borrow no aid from volunteered acts of the garnishee.'' (Drake on Attachments, 7th ed., sec. 451B.)

Inasmuch as there was no legal service of process the bank was under no legal obligation or duty to make any answer, and therefore, no matter what its answer was, no liability could flow therefrom. And where the answer here, and which was purely voluntary in the eyes of the law, was that it was not indebted to the execution debtors, there can be nothing on which to predicate the claim of recovery from the bank. In the case of

*Insurance Company* v. *Friedman Bros.,* supra [74 Tex. 56, 11 S. W. 1047], the very same question arose. The court there reached the same conclusion as we have, and the language employed in its opinion so clearly states the rule and the reason for such conclusion that it may well be adopted here. The court there says:

"Before a judgment can be rendered against one sought to be made liable as garnishee, against his will, the court must have such custody or control over the thing on which the liability depends as will enable it to render a judgment which will bar any claim of the original defendant against the garnishee on account of the disposition made by him of the thing in pursuance of the judgment.

"Such control or custody cannot be given by any answer one sought to be charged as a garnishee may file, and can only exist when the steps made requisite by the statute have been taken . to bring the garnishee before the court. * * *

"Such an obligation [to answer] does not exist until process has been served upon him in accordance with the requirements of the statute.

"It cannot arise from his denial of liability, however made, nor upon an issue made upon his answer, in the absence of service of proper process as required by law."

And even in a case where the garnishee's return is such as to give the court jurisdiction to enter judgment against the garnishee for the amount stated in the return as owing by the garnishee to the execution debtor, if there has not been a proper legal levy giving jurisdiction over the *res* as against the judgment debtor, and the matter is still within the control of the court, the court should relieve the garnishee from liability on his improvident return and thereby avoid the wrong of fastening a double liability upon the garnishee. This is a salutary rule and which has been applied by courts in other states in such situations. In the case of *Fletcher* v. *Wear,* supra, speaking of the right of recovery against the garnishee in such circumstances, the court says: "But as the sole object of the proceeding in garnishment is to obtain an order binding

on the property and credits of the attachment debtor, and not to collect the plaintiff's demand from the garnishee, who owes him nothing whatever, the misfortune of the proceeding resulting in an order or judgment binding on the garnishee alone, which will constitute no protection against a second payment of the same credits, ought to be avoided by the courts, if they can do so while they have control of the proceedings.''

The contention that the judgment debtor is the only one who may question this levy is without merit. The judgment debtor had no cause for complaint—nothing was taken from him. He could have no standing in court on the question.

This case is an example of the confusion that may follow when the law is not strictly complied with in proceedings of this nature. The statute was enacted for the purpose of making clear the way and the steps to be taken to the end that such confusion may be avoided. Here it is proposed that it shall be optional with the sheriff to whom the improper papers are delivered whether the law shall be complied with, and further, that in such circumstances the garnishee shall have the option of saying whether the determination by the sheriff shall be of binding effect on the parties concerned. If such disregard of the statutes be sanctioned and such procedure be condoned, the statutes will lose their effectiveness and the purposes of their enactment will be defeated.

In view of our disposition of the case upon the ground of the invalidity of the levy because of the writ being directed to the sheriff of another county, it is not necessary to consider the other question raised as to whether a deposit in the bank belonging to one of the judgment debtors carried under the name of H. B. Nottingham could be reached under a notice of attachment of property and credits belonging to and debts owing to ''Hildia Bernard Nottingham and Beulah Hall Nottingham.'' While under a judgment against several defendants property of anyone or all may be reached on execution, in levy upon a bank account of one of the defendants it may well be that the bank should have better notice than as given here so there be no question that individual accounts as well as the joint ac-

count of the defendants is sought to be reached. The bank in such a case is put in a difficult position. It is accountable not only to the depositor but to those who may hold checks against the account. It must decide instantly what to do, for its liability under the writ occurs the moment it is served. Apparently the bank here construed the notice as a demand upon a joint account of the two judgment debtors. That is indicated by its answer that it "had no property in its possession, nor under its control belonging to said judgment debtors."

I concur in the opinion of Mr. Justice Morris and in his conclusion that the judgment appealed from should be affirmed. I have expressed my views in order to show additional reasons for sustaining the lower court and to make my position clear.

MR. CHIEF JUSTICE JOHNSON: I concur in the foregoing opinions of Mr. Justice Morris and Mr. Justice Anderson.

MR. JUSTICE ERICKSON: I dissent. By making its return as it did, i. e., that it had no property of the defendant in its possession, the bank waived any objection it had as garnishee to the sufficiency of the writ. The majority seems to overlook the fact that this writ is not being attacked by the judgment debtor but rather by the garnishee. That the garnishee could make such a waiver to any right to attack the sufficiency of the writ so far as it is concerned is settled.

In the cases cited by the majority, there is no waiver as here. In those cases the attack on the sufficiency of the writ is direct. In this case the attack is collateral and it should be noted that the sufficiency of the writ can only be attacked by a motion to quash or by some motion which would have the effect of a plea in abatement. (Shinn on Attachment and Garnishment, 977.)

In 28 C. J. 223, it is said: "A writ of garnishment is to be regarded as a process rather than as a pleading in determining the correct way in which to urge correction to it. Hence, defects cannot be reached by a demurrer but must be attacked by

motion to quash or plea in abatement." (See, also, *Martin* v. *Hostetter,* 59 Okl. 246, 158 Pac. 1174.)

That defects in a writ of garnishment may be waived is so well settled that a long citation of authority should not be necessary. While it is true, as stated in *Bristol* v. *Brent,* 36 Utah, 108, 103 Pac. 1076, 140 Am. St. Rep. 804, 21 Ann. Cas. 1125, that the garnishee by his answer to a defective writ cannot waive any rights which the defendant in the cause may have, he may waive the rights that he as garnishee has to question the sufficiency of the writ, and in the event his waiver might affect some right of the defendant in the cause, only the defendant himself by a proper action can question the waiver.

In 28 C. J. 224 the rule is stated thus: "Defects or objections in the writ as to matters required for the benefit of the garnishee may be waived by him as by his appearance, plea, or answer, without objection," (citing many cases). (See, also, 4 Am. Jur. 616; *Bristol* v. *Brent,* supra.)

It seems to me that the situation, so far as the effect of the answer of the defendant bank to the writ is concerned, is analogous to the situation in ordinary pleadings. The statute sets up requirements for service of the summons, complaint, etc., and these requirements must be followed. Yet it is undoubted that a general appearance by the defendant waives any defects in the summons, manner of service, etc., and that after a general appearance he cannot question their sufficiency. To question their sufficiency he must make a special appearance. By analogy it seems clear to me that a return to a writ stating that the garnishee has no property of the judgment debtor in its possession has the same effect as a general appearance in the ordinary cases. It recognizes the validity of the writ as the general appearance, by way of a general denial, recognizes the validity of the summons, etc., in an action.

In *Bristol* v. *Brent,* supra, the rule is stated: "The regularity of this service [of the writ], in so far as it is personal to the garnishee, may be waived by him, and he may appear before the court either in person or by answer if the law authorizes one

to be made and filed, and thereby confer jurisdiction over his person.''

The majority hold directly that the writ is completely void and that it may not be amended. With this I do not agree. First let it be noted that this court in *Kipp* v. *Burton,* 29 Mont. 96, 74 Pac. 85, 101 Am. St. Rep. 544, 63 L. R. A. 325, has held directly that a writ of execution which lacks the seal of the court may be amended in that respect. In that case, as in this, the amendment was sought after the return of the writ. In the Burton Case the party objecting to the sufficiency of the writ was the judgment debtor and there was no element of waiver. I see no way of distinguishing this case from that one, and the result of the conclusion reached by the majority is to overrule the decision in that case. The requirement that the writ bear the seal is found in the same chapter of our Session Laws and it is couched in exactly the same terminology, i. e., that it must be sealed with the seal of the court.

I do not believe that at this late date without very cogent reasons, which do not here appear, the decision in the case of *Kipp* v. *Burton,* supra, which was made in 1903 and has stood for nearly forty years with many sessions of the legislature intervening when that body might have, if it chose, overruled it but did not do so, should now be set aside. That decision has the support of decisions from other jurisdictions, some rendered prior to that decision and some later.

In the case of *Christy* v. *Springs,* 11 Okl. 710, 69 Pac. 864, in construing a statute similar to ours which provides that an execution shall be issued to the sheriff of the county where the property is held, as did our court, that when the execution was directed to the sheriff of the county in which the judgment was entered, but was delivered to and executed by the sheriff of the county in which the property was situate, the officer to whom it should have been directed, the direction was merely an irregularity, and that it was a defect subject to amendment in making void the writ on the sale and deed made thereunder.

In the early New York case of *Walden* v. *Davison*, 15 Wend. 575, a similar fact situation arose with a like result, the court saying: "The mistake in the direction of the execution did not render it absolutely void, and the court would at any time have ordered an amendment, if that had been necessary for the protection of the officer." In that case the action was against the sheriff, but the principle is the same.

The case of *Hall* v. *Lackmond*, 50 Ark. 113, 6 S. W. 510, 7 Am. St. Rep. 84, was like the *Burton Case* in that the seal was omitted. The attack on the writ was direct. In its decision the court cited many cases and stated the rule to be that it had inherent power to amend its writs when defective. There are a great many cases involving writs issued to the sheriff when they should have been issued to a constable, or directed to a coroner when they should have been directed to a sheriff and vice versa. The rule as stated in Freeman on Execution, 3rd Ed., Chapter 65, has been universally adopted. The rule as there stated is "Where a writ is directed to an improper officer but executed by the proper officer, the error in the direction does not vitiate the writ and may be cured by amendments. Where such an error has been committed the court said 'this is the judicial writ and the erroneous direction is a mere misprision of our own clerk. Judicial writs are more absolutely under the control of the court than original writs. Let the amendment be made.' (*Campbell* v. *Stiles*, 9 Mass. 217.)" Cases applying this rule are: *Pecotte* v. *Oliver*, 2 Idaho, 251, 10 Pac. 302; *Simcoke* v. *Frederick*, 1 Ind. 54; *Hearsey* v. *Bradbury*, 9 Mass. 95; *Morrell* v. *Cook*, 31 Me. 120; and see, also, *Rollins* v. *Rich*, 27 Me. 557; 7 C. J. S., Attachment, sec. 186, p. 380; and 23 C. J. 373, where it is said: "Where plaintiff has a choice under certain circumstances * * * as to the county in which the writ may be sent, and is authorized to have it directed to a county other than that in which the judgment was rendered, an execution irregularly issued into a county other than that in which the judgment was rendered is not absolutely void; and the sheriff will be justified in executing it, and the title of the purchaser thereunder cannot be assailed

collaterally.'' (Citing cases from Kentucky, Minnesota, Pennsylvania, and Texas.)

In the concurring opinion of MR. JUSTICE ANDERSON he says that what is said in Chapter 65 of Freeman on Executions, supra, is inapplicable as in the cases cited in support of that rule there was but one proper officer to execute the writ, while this is not the case here. With this I do not agree. There can be no doubt but that plaintiff by these proceedings sought to reach defendant's property in Chouteau county. But one officer was the proper one for such a levy, that officer being the sheriff of that county in whose hands the writ was placed and who served it. The sheriff of Cascade county could not be a proper person to serve this writ in Chouteau county. The cases cited by Freeman support the statement. The test applied by those cases is this: If in fact the writ is served by a proper officer, then misdirection of the writ to another officer is a mere misprision which may be corrected by amendment.

In *Rollins* v. *Rich*, 27 Me. 557, cited by Freeman, the court said: ''The forms of writs are prescribed by the statute; and the form of an execution requires a direction to the officer, having power to serve it. But if executed by one having official power for the purpose, the omission of such direction may be supplied by amendment under leave of Court.'' To the same effect are *Hearsey* v. *Bradbury*, 9 Mass. 95; *Wood* v. *Ross*, 11 Mass. 271; and *Walden* v. *Davison*, supra, cited by the author in support of his statement.

In the case of *Bybee* v. *Ashby*, (Ill.) 2 Gilman, 151, 43 Am. Dec. 47, the court discussed the Walden case, supra, and stated that it disagreed with that portion of the decision which we have heretofore quoted. Then the court said this: ''Where it [the writ] is issued without the proper seal of Court attached'' and where directed to a sheriff of a county other than where executed ''such process will not justify the officer in executing it, and all his acts under it will be absolutely void, and he a trespasser.''

It will be seen that the Illinois court placed the direction and the seal in the same class, and held omission of the one and a

mistake in the other voided the writ. *Kipp* v. *Burton,* supra, was decided many years after the Illinois case, and as to the seal our court held directly contrary to the holding in that case. Several cases are cited in the note to the Illinois case in 43 Am. Dec. 47, among them *Cox* v. *Nelson,* (Ky.) 1 T. B. Mon. 94, 15 Am. Dec. 89. It holds contrary to the Illinois decision, saying that a writ issued to the wrong county is at most voidable. To the same effect is *Sanders' Heirs* v. *Ruddle,* (Ky.) 2 T. B. Mon. 139, 15 Am. Dec. 148; and *Commonwealth* v. *O'Cull,* (Ky.) 7 J. J. Marsh, 149, 23 Am. Dec. 393. The concurring opinion cites two New York cases, *Corrigan* v. *Kahn,* 120 Misc. 161, 198 N. Y. Supp. 785, and *Huber* v. *Moran-Greenberg Corp.,* 120 Misc. 104, 198 N. Y. Supp. 434. A reading of these cases will show that they are not in point. They are proceedings based on peculiar New York statutes providing for certain supplementary proceedings in courts other than the one in which judgment was taken, and they are no authority in any way for the view of the majority in this case. This likewise is true of the case of *Fletcher* v. *Wear,* 81 Mo. 524. There the service was made by a person not authorized by law to do so and, of course, it was void. The court there said: "I do not think the justice was empowered to appoint any one to serve the extraordinary process of attachment by garnishment. From this, it follows that there was no service of the process at all." In this case it may be noted, too, that the action was a direct attack upon the writ.

In conclusion it is my opinion that this court should adhere to the decision in *Kipp* v. *Burton,* supra, and the majority rule as set out in the case of *Christy* v. *Springs,* 11 Okl. 710, 69 Pac. 864, and other cases herein cited. It seems to me the majority opinion will work a very serious harm to all who in the future find themselves in the position of garnishees. The majority has placed on the garnishee the duty to strictly examine every writ, and if any error exists in that writ which the garnishee overlooks, and if he turns over any of the defendant's property in pursuance of it, then no matter how little merit there is in the judgment debtor's position, and no matter how

slight the defect, if the writ does not exactly conform to the statute, the garnishee becomes absolutely liable to the judgment debtor. Every garnishee must then act at his own peril. It seems to me that garnishees will be better protected and justice better served if we adhere to the rule stated in the modern work, 23 C. J. 373, and 28 C. J. 224, as above quoted, than returning to the rule, even as to which most authorities were then contract, announced in Wade on Attachment, published in 1886 and found in *Bybee* v. *Ashby,* supra, decided in 1845, and which our own court repudiated as to the seal on the writ, in the *Kipp Case,* supra.

A question not discussed by the majority, and in view of the conclusion they reach one that was unnecessary for them to consider, was raised upon the appeal by the respondent. The writ named the defendant Hildia Bernard Nottingham, the full name of the defendant. It is admitted that Hildia Bernard Nottingham and H. B. Nottingham are one and the same person. It is admitted that the bank had an account which stood in the name of H. B. Nottingham and he had sufficient money in it to satisfy the judgment in question. There can be no question but that the name in the writ was sufficient to put the bank on notice that the person named in the writ was its depositor.

I believe that the judgment should be reversed with directions to enter judgment for this plaintiff.

MR. JUSTICE ANGSTMAN: I concur in the above dissent of Mr. Justice Erickson.

Rehearing denied July 14, 1941.